915 So.2d 755 (2005)
Alexander L. KAPLAN and Denise A. Kaplan, Appellants,
v.
KIMBALL HILL HOMES FLORIDA, INC., Appellee. and
Kimball Hill Homes Florida, Inc., Appellant,
v.
Alexander L. Kaplan and Denise A. Kaplan, Appellees.
Nos. 2D05-575, 2D05-696.
District Court of Appeal of Florida, Second District.
December 9, 2005.
*757 Alexander L. Kaplan, pro se, and Alexander L. Kaplan of Alexander L. Kaplan, P.A., Naples, for Denise A. Kaplan.
Stacy D. Blank of Holland & Knight, Tampa, for Kimball Hill Homes Florida, Inc.
CANADY, Judge.
In this consolidated appeal, we consider whether claims arising in connection with a residential construction contract are subject to arbitration. Alexander L. Kaplan and Denise A. Kaplan appeal the trial court's order granting the motion to compel arbitration filed by Kimball Hill Homes Florida, Inc., on the Kaplans' claims for fraud and fraudulent inducement (counts I and II). Kimball Hill cross-appeals the trial court's denial of its motion to compel arbitration on the Kaplans' claim for intentional infliction of emotional distress (count III). Based on the arbitration provision to which the parties agreed, we conclude that the trial court correctly ordered arbitration on the first two claims, but erred in denying arbitration on the third claim.

I. Background

The Kaplans' fraudulent inducement claim was based on the assertion that Kimball Hill repeatedly made false statements regarding its ability to complete the home within the time required by the contract. *758 The fraud claim was based on allegations that Kimball Hill failed to disclose pertinent facts concerning (a) water runoff and drainage from adjacent property onto the homesite, and (b) the obstruction by landscaping of the "golf course view" from the homesite. In the intentional infliction of emotional distress claim, the Kaplans alleged that Kimball Hill's conduct "evidenced malice and/or a great indifference to the rights of" the Kaplans and that Kimball Hill "knew or should have known that [the Kaplans] would suffer emotional distress" as a result of Kimball Hill's conduct.
The contract contained an arbitration clause providing, in relevant part, that
[a]ny controversy or claim between [the parties] relating to this agreement or... the Home or the project or community in which the Home is located, whether the controversy or claim arose or is based upon actions and occurrences before or after the date of this agreement,... shall be resolved by binding arbitration.... [The parties] specifically waive any right to have such controversy or claim resolved by judicial proceedings, including any right to trial by jury.
. . . .
The parties' agreement to arbitrate shall survive termination of the Agreement.
After a hearing on Kimball Hill's motion to compel arbitration, the trial court ordered arbitration on the fraud and fraudulent inducement claims but denied arbitration on the intentional infliction of emotional distress claim.

II. Argument on Appeal

On appeal, the Kaplans assert that (1) their claims were independent tort claims that did not rely on the contract and thus were not within the scope of the arbitration provision; (2) due to various alleged errors, ambiguities, and omissions in the contract, there was "no mutuality of contract"; (3) the trial court erred by failing to hold an evidentiary hearing on the mutuality of contract issue prior to ordering counts I and II to arbitration; and (4) compelled arbitration denies the Kaplans' rights to due process, access to courts, and trial by jury. The Kaplans do not argue that the arbitration agreement was unconscionable. On cross-appeal, Kimball Hill asserts that the intentional infliction of emotional distress claim, like the claims for fraud and fraudulent inducement, was dependent on the contract and thus within the scope of the arbitration provision.

III. Analysis

In determining the merits of the arguments made in the appeal and cross-appeal, we will first consider the principles used for interpreting the scope of arbitration agreements. Our interpretation of the scope of the arbitration agreement will answer the question of "whether an arbitrable issue exists." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999).[1] We will specifically address whether each of the three claims made by the Kaplans presents an arbitrable issue under the terms of the arbitration agreement. Next, we will examine the Kaplans' argument that there was "no mutuality of contract" and the related procedural issue raised by the Kaplans regarding the trial court's failure to conduct an evidentiary hearing. Finally, *759 we will address the constitutional issues raised by the Kaplans.

A. Scope of the Arbitration Agreement

"[B]ecause arbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation." Id. at 636. In deciding the scope of an arbitration agreement, a court must therefore focus on the text of the particular agreement.
The determination of the scope of a particular arbitration agreement requires consideration of the relationship between the contract and the claim at issue. The "legal label attached to the dispute (i.e., tort or breach of contract)" is not controlling. Id. at 638. "[E]ven in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." Id. It is not sufficient "that the dispute would not have arisen but for the existence of the contract." Id. Instead, for a claim to be subject to arbitration "it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." Id.
Here, a key to understanding the scope of the arbitration agreement is the provision in the agreement requiring the arbitration of any controversy or claim "relating to" the contract, the home, or the project or community in which the home is located. The inclusion in an arbitration agreement of a reference to the arbitration of disputes "relating to" a contract "has been construed as broadening the scope of the arbitration provision." Id. at 637. The phrase "relating to" is understood as having a more expansive reference than the phrase "arising out of" or "arising under." Id.
Where an arbitration agreement provides for the arbitration of disputes relating to a contract, "[t]ort claims based on duties that are dependent upon the existence of the contractual relationship between the parties are normally arbitrable." Stacy David, Inc. v. Consuegra, 845 So.2d 303, 306 (Fla. 2d DCA 2003). "[D]uties alleged under theories such as fraud in the inducement of a contract [and] fraud in the performance of a contract ... are duties dependent upon the existence of a contractual relationship between the parties." Id. The same principle is applicable to claims for intentional infliction of emotional distress related to the performance of a contract. See Henderson v. Idowu, 828 So.2d 451 (Fla. 4th DCA 2002). "[T]here is a nexus between [such] tort claims" and the contractual relationship. Id. at 453.
Although the Kaplans' claims are not framed as breach of contract claims, there is an undeniable nexus between the claims and the construction contract. The very issues which gave rise to the dispute are specifically mentioned in the contract. Regarding the completion date, the contract states "[b]uilder agrees to complete by end of August [2004] barring unforeseen problems not of builder's making." As to the golf course view, the Kaplans initialed a document indicating the lot they selected had a golf course view. However, the contract itself specifies that the community in which it was located may "include various improvements such as ... landscaping," and Kimball Hill was making no representations concerning such improvements. Instead, under the contract the Kaplans are entitled to rely only upon the recorded plat and their own physical inspection. Furthermore, the contract *760 provides that "[b]uilder makes no representations with respect to intended or actual use of any other adjacent or nearby property, whether part of the project or not." The references to landscaping and adjacent properties go directly to the Kaplans' assertion about the golf course view. In relation to the drainage issue, the contract contains a provision stating that the "[b]uilder shall not have any liability to owners ... in connection with retention and detention lakes and drainage easements or any part of the stormwater [sic] management system located within or adjacent to the project or community in which the Home is located." Finally, the intentional infliction of emotional distress claim is based on the same underlying misconduct by Kimball Hill that is alleged in the fraud and fraudulent inducement claims. The emotional distress claim thus has the same nexus with the contract as do the other intentional tort claims. Tellingly, the Kaplans make extensive reference to the substantive provisions of the contract in explaining their claims against Kimball Hill in the briefs submitted in this appeal. Clearly, resolution of the disputed issues will require reference to the contract and related documents.
All of the claims made by the Kaplans are based on asserted "duties that are dependent upon the existence of the contractual relationship between the parties," Stacy David, Inc., 845 So.2d at 306, and "raise some issue the resolution of which requires reference to or construction of some portion of the contract itself," Seifert, 750 So.2d at 638. Accordingly, the claims all fall within the scope of the agreement to arbitrate disputes related to the contract.

B. The Mutuality of Contract Issue

Where a party attacks the validity of the contract as a whole, rather than specifically attacking the arbitration provision, the claims are properly submitted to arbitration. See Stacy David, Inc., 845 So.2d at 307; Simpson v. Cohen, 812 So.2d 588, 590 (Fla. 4th DCA 2002) ("It is well established that a dispute must be arbitrated where a complaint alleges fraud seeking to avoid or invalidate an entire agreement, rather than just the arbitration clause within the agreement."); Medident Constr., Inc. v. Chappell, 632 So.2d 194, 195 (Fla. 3d DCA 1994) ("Where fraud or some other ground for avoidance or invalidity of contract is alleged as to an entire agreement rather than specifically as to the arbitration clause within that agreement, the entire matter should be resolved by arbitration."); Beaver Coaches, Inc. v. Revels Nationwide R.V., 543 So.2d 359, 361-62 (Fla. 1st DCA 1989) (noting that claim of lack of mutuality should be submitted to arbitration so long as it does not pertain to arbitration provision itself). Cf. R.A.M. of S. Fla., Inc. v. WCI Cmtys., Inc., 869 So.2d 1210, 1213 (Fla. 2d DCA 2004) (noting that illegality of contract is an issue to be decided by trial court rather than arbitrated); R.B.F. Mgmt. Co. v. Sunshine Towers Apartment Residences Ass'n, 352 So.2d 561, 562-64 (Fla. 2d DCA 1977) (holding that arbitration could not be compelled where plaintiff sought only rescission and there was "no claim for damages in any of the five counts in the complaint").
Here, the Kaplans claim the entire contract should fail for lack of mutuality due to errors, omissions, and ambiguities in the various contract documents. Because the claim goes to the entire contract, rather than specifically to the arbitration provision, that claim must be resolved by the arbitrators. The trial court was, of course, not required to conduct an evidentiary hearing concerning an issue which was to be resolved in the arbitration *761 proceeding. Accordingly, the Kaplans' arguments regarding mutuality of contract are without merit.

C. The Constitutional Issues

"[T]he rights of access to courts and trial by jury may be contractually relinquished." Global Travel Mktg., Inc. v. Shea, 908 So.2d 392, 398 (Fla.2005). Here, those rights were specifically waived in the contract by inclusion of the statement that the parties waived "any right" to have disputes "resolved by judicial proceedings, including any right to trial by jury." And, of course, an agreement to arbitrate necessarily is understood to involve the relinquishment of the rights of access to courts and trial by jury. Although a specific waiver of those rights was present here, such a waiver is not necessary. See Terminix Int'l Co. v. Ponzio, 693 So.2d 104, 109 (Fla. 5th DCA 1997) (holding that even in the absence of specific waiver, plaintiff waived rights of access to courts and of trial by jury "by consenting to arbitrate disputes" arising from contract). Similarly, the Kaplans have no viable claim that a process to which they specifically agreed violates their constitutional due process rights. Compelled arbitration does not violate the Kaplans' constitutional rights, because the Kaplans agreed generally to arbitrate controversies or claims relating to the agreement, the home, or the project or community and because they specifically waived their rights of access and trial by jury.

IV. Conclusion

We therefore affirm the trial court's order granting the motion to compel arbitration on the fraud and fraudulent inducement claims and reverse the order denying the motion to compel arbitration on the intentional infliction of emotional distress claim.
Affirmed in part, reversed in part, and remanded.
WHATLEY and SALCINES, JJ., Concur.
NOTES
[1] "[T]here are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert, 750 So.2d at 636.