MARSTILLER, J.,
dissenting.
I respectfully dissent for I find two flaws in the majority’s analysis. First, the contract language shows the parties intended to arbitrate Appellants’ fraudulent inducement claim. Second, unlike the wrongful death claim in Seifert, the fraud claim in this case cannot stand in the absence of the parties’ contractual relationship because resolution of the claim requires reference to the contract.
To determine whether Appellants’ claim is arbitrable, “[t]he plain language of the agreement containing the arbitration clause is the best evidence of the parties’ intent.” Ballenisles Country Club, Inc. v. Dexter Realty, 24 So.3d 649, 652 (Fla. 4th DCA 2009) (citing Royal Oak Landing Homeowner’s Ass’n v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993)). “The arbitration clause must be read together with the other provisions in the contract.” Id. This the majority has failed to do, focusing instead only on the arbitration language.
As to arbitration, the contract provides:
14. DISPUTE RESOLUTION: ...
All controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
(b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract.... This clause will survive closing.
(Second emphasis added.) Elsewhere in the contract and relevant to the condition of the property, which Appellants claim Appellees fraudulently misrepresented, there is this:
*1202 6. LAND USE: Seller will deliver the Property to Buyer at the time agreed in its present “as is” condition, with conditions resulting from Buyer’s inspections and casualty damage, if any, excepted.
(c) Inspections: (check (1) or (2) below)
(1) Feasibility Study: Buyer will, at Buyer’s expense and within 30 days from Effective Date (“Feasibility Study Period”), determine whether the Property is suitable, in Buyer’s sole and absolute discretion, for _ use. During the Feasibility Study Period, Buyer may conduct a Phase I environmental assessment and any other tests, analyses, surveys and investigations (“inspections”) that Buyer deems necessary to determine to Buyer’s satisfaction the Property’s engineering, architectural and environmental properties ... to determine the Property’s suitability for the Buyer’s intended use.
Buyer will deliver written notice to Seller prior to the expiration of the Feasibility Study Period of Buyer’s determination of whether or not the Property is acceptable. Buyer’s failure to comply with this notice requirement will constitute acceptance of the Property as suitable for Buyer’s intended use in its “as is” condition. If the Property is unacceptable to the Buyer and written notice of this fact is timely delivered to Seller, this Contract will be deemed terminated as of the day after the Feasibility Study period ends and Buyer’s deposit(s) will be returned after Escrow Agent receives proper authorization from all interested parties.
(2) No Feasibility Study: Buyer is satisfied that the property is suitable for Buyer’s purposes.... This Contract is not contingent on Buyer conducting any further investigations.
(Second emphasis added.) The contract reflects option (1) is checked.
It is evident the parties contemplated the property may turn out not to be suitable for Appellants’ purposes. Hence they made the sale of the property contingent on Appellants’ obtaining a feasibility study — to include an environmental assessment — and accepting the property, and provided contractual remedies should Appellants deem the property unsuitable.[2] The arbitration provision covers “all” controversies or claims arising from or relating to “this transaction” (i.e., the sale of the property) or “this Contract.” The gravamen of Appellants’ claim is that Appel-lees fraudulently sold them land that cannot economically be built upon because it contains environmentally sensitive wetlands. As such, the fraudulent inducement claim squarely addresses the issue of the property’s suitability for Appellants’ purposes. Reading the land use and suitability provisions together with the unambiguous language in the arbitration provision, the ineluctable conclusion is that Appellant’s claim is precisely the type the parties intended would be arbitrated.
Appellants point out that under the contract, an arbitrator cannot award any remedy not provided for in the contract. They assert that because they are seeking dam *1203 ages including lost profits, and the contract does not provide for such damages, the parties did not intend to arbitrate the fraud claim. The majority seems to agree. Maj. op. at 1199. But parties to a contract surely can agree to limit their remedies. Cf. Kaplan v. Kimball Hill Homes Florida, Inc., 915 So.2d 755, 761 (Fla. 2d DCA 2005) (stating that parties can relinquish right to jury trial via contract and that agreement to arbitrate claims necessarily involves such a waiver). Thus the fact that recoupment of lost profits is not a remedy available to Appellants does not bear on whether the fraud claim is arbitrable. The court in Maguire v. King, 917 So.2d 263 (Fla. 5th DCA 2005), dismissed the same argument made by the party seeking to avoid arbitrating fraud and fraud in the inducement claims. The court reasoned, “these terms merely delineate the powers of the arbitrator and [are] remedial limitations, rather than restrictions on the scope of arbitration.” Id. at 267.
Not only does the parties’ contract evidence their intent to arbitrate Appellants’ fraudulent inducement claim, but under Seifert, the claim is arbitrable.[3] “[T]he test for determining arbitrability of a particular claim under a broad arbitration provision is whether a ‘significant relationship’ exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute (i.e., tort or breach of contract).” Seifert, 750 So.2d at 637-38 (citing Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93-94 (4th Cir.1996)). There must be “some nexus between the dispute and the contract containing the arbitration clause.” Id. at 638. “[F]or a tort claim to be considered ‘arising out of or relating to’ an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself.” Id. Certainly, the wrongful death claim at issue in Seifert could be resolved without reference to the parties’ home construction contract. As to the fraudulent inducement claim at issue in this case, the majority holds:
Appellants’ fraud claim is not significantly related to the contract. Appellants’ common-law fraud claim does not require reference to or construction of the contract, nor does it invoke any contractual provision.... The contract here is incidental to the dispute, because Appellants theoretically could have raised their fraud claim even before the contract was signed if Appellants detrimentally relied on Appellees’ advertisement.
Maj. op. at 1199.
But Appellants’ complaint refers to and attaches the parties’ contract.[4] According *1204 to the complaint, Appellees advertised property for sale in the Multiple Listing Service, stating “Wetlands study verifies No Wetlands.” The complaint further alleges:
15. Based on the representation of no wetlands ... Plaintiffs entered into a Contract to purchase the property for the sum of $253,000 (Contract). A copy of the Contract is attached hereto as Exhibit B.
20. The representation made by the Jacksons and Jackson Realty in the Multiple Listing Service advertisement were [sic] knowingly false when made. If Plaintiffs had known that 26% of the land was wetlands they would not have purchased the subject property because 26% wetlands made the [affordable housing] project economically unfeasible.
Thus the detrimental reliance element of Appellants’ claim is the contract. In other words, but for the contract under which Appellants purchased the property, there is no fraudulent inducement claim. Moreover, resolution of the claim will necessarily implicate the contract’s land use and suitability provisions set forth swpra. Although, as the majority suggests, Appellants could, in the abstract, bring a common law fraud in the inducement claim that is independent of the parties’ contract, that is not the correct analysis under Sei-fert The question is whether this claim has a nexus to the contract. And the answer is decidedly yes. “ ‘[D]uties alleged under theories such as fraud in the inducement of a contract [and] fraud in the performance of a contract ... are duties dependent upon the existence of a contractual relationship between the parties.’” Kimball Hill Homes, 915 So.2d at 759 (quoting Stacy David, Inc. v. Consuegra, 845 So.2d 303, 306 (Fla. 2d DCA 2003)). “ ‘[T]here is a nexus between [such] tort claims’ and the contractual relationship.” Id. (quoting Henderson v. Idowu, 828 So.2d 451, 453 (Fla. 4th DCA 2002)).
For these reasons, I respectfully disagree with the majority’s analysis in this case and conclude the trial court’s order dismissing Appellants’ complaint should be affirmed.

. The fact that this is a uniform real estate contract did not preclude the parties from excising the land use provisions had they seen fit to do so.

. I concur that under Seifert, the arbitration provision at issue in this case is properly classified as broad.

. Notably, in the paragraph preceding their demand for jury trial, Appellants allege: "Pursuant to the terms of the Contract referred to herein as Exhibit B, Plaintiffs are entitled to have their attorneys’ fees paid by the Defendants.” The only fee provision in the contract follows the arbitration provision and reads, in pertinent part:'
(c) Mediation and Arbitration; Expenses: ... The parties will equally divide the mediation fee, if any.... Each party to any arbitration will pay its own fees, costs and expenses, including attorneys’ fees, and will equally split the arbitrators’ fees and administrative fees of arbitration. In a civil action to enforce an arbitration award, the prevailing party to the arbitration shall be entitled to recover from the nonprevailing party reasonable attorneys' fees, costs and expenses.
(Emphasis added.)