MORRIS, Judge.
In these consolidated appeals, Rudolph Heiny, the husband, and Fran Pupello, the wife, both appeal a final judgment of dissolution entered in 2009 and a final judgment of attorneys’ fees entered against the husband in 2010. The husband argues that the trial court made four errors in the equitable distribution plan and in ordering him to pay 100% of the wife’s fees as a sanction against him. In her cross-appeals, the wife argues that the trial court *899 made three errors in the equitable distribution plan. She also argues that the trial court abused its discretion in failing to award costs on the same basis as attorneys’ fees and in permitting the husband to pay the attorneys’ fee award in monthly installments. We agree that the trial court made errors in the equitable distribution plan, specifically regarding the wife’s premarital home, the debt on the marital rental property, funds paid by the parties to the pool business, and the Mercantile Bank savings account. We also conclude that the trial court erred in ordering the husband to pay all of the wife’s attorneys’ fees as a sanction and in its calculation of the amount of fees to be paid by the husband. To this extent only, we reverse the judgments of the trial court. We affirm in all other respects.
I. Introduction
The parties married in 1996. They had two children during the marriage. The husband is a pool contractor, and the wife is an accountant. During the marriage, they worked together in the husband’s pool construction business. Before the parties married, they signed an antenup-tial agreement. The general purpose and intent of the agreement was to protect each party’s premarital assets as separate property. The antenuptial agreement contained a specific provision regarding the wife’s premarital home, which is discussed in further detail below. During the marriage, the parties and their two minor children resided in the wife’s premarital home. The parties bought adjacent property and made improvements to both the wife’s premarital home and the adjacent property for the benefit and use of the family.
At the time of the dissolution, the marital property subject to equitable distribution included the property adjacent to the wife’s premarital home; rental property (the Genessee property); various investment, retirement, and bank accounts; a car; and other personal property. The parties also sought a determination regarding the husband’s interest in the wife’s premarital home and the wife’s interest in the pool business. The parties’ marital debts consisted of a home mortgage with a balance of $276,000 and a mortgage on the Genessee property with a disputed balance somewhere between $36,000 and $60,000.
In the final judgment, the trial court awarded the wife her premarital home as a nonmarital asset. As part of the equitable distribution plan, the trial court awarded the husband a one-half interest in the appreciation of the wife’s premarital home. The trial court awarded the wife the adjacent pool property in the equitable distribution plan. The trial court awarded the husband the pool business as a nonmarital asset. The trial court then ordered the husband to pay 100% of the wife’s attorneys’ fees based on his litigation misconduct.
As noted in the final judgment of dissolution, the parties did not litigate the time-sharing schedule and parenting plan involving the children, but the final judgment contained rulings regarding child support, which neither party challenges on appeal.
II. Discussion

A. The wife’s premarital home

The antenuptial agreement provides in relevant part:
6. Agreements Concerning Fran’s House. The parties hereto intend to reside in Fran’s house.... The House shall be and remain titled in Fran’s name alone and, except as specifically provided in Section 6, Rudy shall have no right, title or interest in and to the House or any of Fran’s Separate Property contained herein. Further, with *900 respect to the House, the parties agree as follows:
(a) If a petition for dissolution of marriage is filed by either of the parties hereto after the date the parties are married, upon the entry of an order dissolving the marriage of the parties, Fran shall pay to Rudy a sum equal to one-half of all principal payments and any capital improvements made with respect to the House between the date of the marriage of the parties and the date on which a petition for dissolution of marriage was filed.
In the proceedings below, the parties agreed that the antenuptial agreement was valid and enforceable.
In the final judgment of dissolution, the trial court assigned the wife’s premarital home an equity value of $285,000 at the time of the marriage in 1996. The trial court found that the home’s equity value had appreciated in the amount of $272,813 to have an equity value of $557,813 at the time of the dissolution.[1] The trial court then found that “[o]ne half of those capital improvements would be $136,406.50,” awarding the husband that amount in the equitable distribution calculations.
On cross-appeal, the wife asserts that the trial court misinterpreted the terms of the antenuptial agreement and that pursuant to the terms of the agreement, the husband was only entitled to credit for one-half of the costs of capital improvements and one-half of the principle mortgage payments made during the marriage.
A trial court’s interpretation of an antenuptial agreement “ ⅝ reviewed de novo, as such agreements are governed by the law of contracts.’ ” Murley v. Wiedemann, 25 So.3d 27, 29 (Fla. 2d DCA 2009) (quoting Taylor v. Taylor, 1 So.3d 348, 350 (Fla. 1st DCA 2009)). “When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties’ intent.” Id. (citing Royal Oak Landing Homeowner’s Ass’n v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993); Knott v. Revolution Software, Inc., 181 Ohio App.3d 519, 909 N.E.2d 702, 712 (2009)). We conclude that the trial court erred in interpreting the antenuptial agreement to provide that the husband is entitled to half of the appreciated value of the property resulting from capital improvements. The plain language of the agreement clearly limits the husband’s interest in the wife’s premarital home to one-half of principal payments and one-half of capital improvements made by the parties during the marriage. The trial court’s calculation erroneously took into consideration the appreciation of the premarital home, which was not contemplated by the terms of the antenuptial agreement. The husband’s benefit regarding the wife’s premarital home was limited to one-half of the cost of the improvements and one-half of the amount of the principal payments made during the marriage. Accordingly, we reverse the trial court’s finding that the husband was entitled to one-half of the appreciated value of the wife’s home. We remand for the trial court to reconsider the husband’s interest in the premarital home according to the terms of the ante-nuptial agreement.
[3] Additionally, the trial court erred in its finding regarding the premarital value of the wife’s premarital home, as argued by the husband on appeal. The undisputed testimony was that the home was worth $341,000 when the parties married, but the trial court found that the home was worth $375,000 at the time of the *901 marriage. There appears to be no support in the record for the trial court’s finding; therefore, we reverse on this matter. See Tucker v. Tucker, 966 So.2d 25, 26 (Fla. 2d DCA 2007) (“The trial court’s valuation of marital assets must be supported by competent, substantial evidence.” (citing § 61.075(3), Fla. Stat. (2005)). We note that the value of the wife’s premarital home is likely irrelevant to the overall equitable distribution plan in light of our conclusion above that the husband has no interest in any appreciated value of the home.

B. The Genessee rental property

The trial court awarded the husband the Genessee rental property, valued at $103,898.69. On appeal, the husband argues that the trial court failed to make findings regarding the mortgage debt on the property that he paid off during the dissolution proceedings. The wife responds that even though the husband would be entitled to credit for the amount of debt he satisfied by paying off the mortgage, he failed to produce any evidence to show the source of the funds he used to pay off the debt.
While it is undisputed that there was a marital mortgage on this property, there was conflicting evidence regarding the balance of the mortgage when it was paid off by the husband. The wife’s accountant testified at trial that according to the wife’s financial affidavit, the Genessee rental property had a mortgage in the amount of $60,000 at the time the wife filed for divorce. The wife acknowledged that the husband paid off the debt and that he would be entitled to credit, depending on the source of the funds he used to pay off the debt. The husband testified that he paid off the $60,000 loan. Regarding the funds he used, he testified to the following:
A. I paid off the indebtedness by borrowing the money from my uncle. I used part of the money that was repaid from the Bustamante loan....
[[Image here]]
Q. How much money did you borrow from your uncle to pay off the foreclosure?
A. I had, I think, 27,000 or 17,000 or whatever the difference was from the Bustamante loan[2] to get to the 60 I had to borrow....
The husband did not produce any documentation to support his assertion that he paid off the loan with nonmarital funds. In addition, his financial affidavit listed the Genessee rental property mortgage as having a $36,000 balance. The record further indicates that when the parties fell behind on their payments on the loan, the wife’s father bought the note and filed suit to foreclose the mortgage. The assignment of the note to the wife’s father indicates that the principal amount of the note was $40,000.
Although this property was distributed to the husband in the final judgment as part of the equitable distribution plan, the marital mortgage debt on this property that was satisfied by the husband was not credited to the husband or mentioned in the final judgment. Section 61.075, Florida Statutes (2009), requires a trial judge to identify all marital assets and liabilities as defined therein, value them, and distribute them equitably between the parties. A trial court’s failure to include all marital assets or debts in an equitable distribution plan violates section 61.075 and requires reversal. See Wolf v. Wolf, 979 So.2d *902 1123, 1125 (Fla. 2d DCA 2008) (“It is reversible error for the trial court to fail to identify and distribute each marital asset and liability.”); Ritter v. Ritter, 690 So.2d 1872, 1375-76 (Fla. 2d DCA 1997) (reversing an equitable distribution judgment because the trial court failed to include and value undisputed marital loans made against life insurance policies in equitable distribution). Accordingly, we reverse this portion of the equitable distribution plan. On remand, the trial court shall make findings regarding the amount of debt the husband paid on the Genessee rental property and whether the husband used non-marital or marital funds to pay the debt. The trial court shall factor the findings into the overall equitable distribution plan.

C. $75,000 paid to the pool business

In the final judgment, the trial court found that the parties had loaned $75,000 to the pool business. The trial court awarded the husband the pool business as a nonmarital asset, “with the exception of the one-half of the $75,000 investment ($37,500) that shall be made payable back to the [wjife.” On appeal, the husband contends that the trial court erred in including this amount in the equitable distribution plan because the evidence showed that after the parties paid the money to the pool business, the parties used the money to pay for business and personal expenses.
On this issue, the wife, who is an accountant, testified that when the parties refinanced the marital home in 1999, they put $75,000 of the loan proceeds into the pool business to pay business debts and some of their personal expenses associated with “the pool improvements” to the marital property adjacent to the wife’s premarital home. The evidence demonstrates that both parties jointly depleted the $75,000, and the trial court erred in treating it as a marital asset subject to equitable distribution. The wife testified that this money was loaned to the company and claimed that it was a receivable marital asset. But there was no loan document, written promise, or any other indication that the company had any legal obligation to repay that money. The evidence demonstrated, and the trial court found, that the business employed both parties, paid both parties’ salaries, and paid “for many of the couple’s personal and household expenses during the marriage.” See Mobley v. Mobley, 18 So.3d 724, 726-727 (Fla. 2d DCA 2009) (holding that it was error to distribute a depleted asset in equitable distribution absent a finding that the asset was depleted due to misconduct). In light of the undisputed evidence that both parties jointly used the $75,000 and in the absence of evidence that the $75,000 was loaned to the business with the intention of being repaid by the business, the trial court erred in treating the $75,000 as a receivable marital asset subject to equitable distribution. Cf. Bell v. Bell, 68 So.3d 321, 326 (Fla. 4th DCA 2011) (recognizing that loans that will eventually be repaid may be labeled marital assets subject to equitable distribution). We reverse the equitable distribution plan and remand for the trial court to delete the $75,000 from the parties’ marital assets.

D. Mercantile Bank savings account

On cross-appeal, the wife argues that the trial court erred in including the $48,933 Mercantile Bank savings account in the equitable distribution plan and in assigning it to the wife because the funds in the account were spent on family expenses during the litigation. See Mobley, 18 So.3d at 727; Austin v. Austin, 12 So.3d 314, 316-17 (Fla. 2d DCA 2009) (“When a spouse depletes marital assets during the pendency of dissolution proceedings to pay for support, living expenses and litigation expenses, it is error to include the assets in the equitable distri- *903 button plan in the absence of misconduct”). The husband concedes that the trial court erred in this regard. Accordingly, we reverse the equitable distribution plan and remand for the trial court to delete this account from the marital assets.

E. Attorneys’fees

The trial court ordered the husband to pay 100% of the wife’s reasonable attorneys’ fees, totaling $210,810, as a sanction for his misconduct in the underlying litigation.[3] On appeal, the husband contends that the trial court erred in failing to consider the amount of increased litigation caused by the husband’s misconduct. We conclude that the trial court erred in ordering the husband to pay 100% of the wife’s fees.
In Pietras v. Pietras, 842 So.2d 956, 962-68 (Fla. 4th DCA 2003), the Fourth District reversed a trial court order requiring the husband to pay all of the wife’s attorneys’ fees as a sanction for “litigious behavior.” The court held that the fees imposed as a sanction must be based on the “additional work” that resulted from the husband’s litigious behavior. Id. at 962-963. In remanding the ease, the court directed the trial court to “apportion a reasonable amount of [the wife’s] attorney’s fees based on a finding that [the husband’s] ‘litigious behavior’ caused some additional work.” Id. at 963; see Elliott v. Elliott, 867 So.2d 1198, 1200-02 (Fla. 5th DCA 2004) (reversing in part because of trial court’s failure to “directly quantify the portion of the wife’s attorney’s fees incurred as a result of the husband’s purported misconduct”); see also Moakley v. Smallwood, 826 So.2d 221, 227 (Fla.2002) (holding that trial judge has inherent authority to award fees as a result of the bad faith conduct of an attorney or litigant but that “the amount of the award of attorneys’ fees must be directly related to the attorneys’ fees and costs that the opposing party has incurred as a result of the specific bad faith conduct” of the attorney or litigant).
We note that the misconduct of the husband in this case is obvious, and we affirm the trial court’s finding in that regard.[4] Nonetheless, after finding that the husband engaged in misconduct, the trial court was required to apportion the wife’s award of fees based on the additional work caused by the husband’s misconduct. The trial court found that the dissolution should not have taken four years to resolve, noting the husband’s various instances of litigation misconduct, but as indicated by this court’s decision, the husband raised legitimate legal arguments in the dissolution proceedings. Considering the legitimate issues before the trial court, the entirety of the wife’s legal fees could not have been the direct result of the husband’s misconduct. Accordingly, we reverse the final judgment on attorney’s fees and remand for further proceedings consistent with this opinion.
*904 The husband also claims that the trial court erred in its calculations regarding the balance the husband is required to pay the wife in order to equalize the equitable distribution awards and satisfy the fee award. He claims that the final fee judgment charged the husband for an amount of temporary fees ($36,908) for which he was responsible but that this amount had already been charged against him in the equitable distribution equation. The wife concedes error on this point, and we reverse the final judgment of attorneys’ fees and remand for the trial court to strike this amount from its final determination of fees.
III. Conclusion
In conclusion, we reverse the equitable distribution plan in the final judgment of dissolution as outlined above, and we remand for further proceedings in accordance with this opinion. On remand, the trial court may make any necessary adjustments to the equitable distribution plan. We also reverse the final judgments as they relate to attorneys’ fees and remand for further proceedings consistent with this opinion. We affirm the final judgments in all other respects.
Affirmed in part; reversed in part; remanded.
LaROSE and CRENSHAW, JJ., Concur.

. This valuation does not include the adjacent property, which the trial court referred to as the pool property. The trial court found that the pool property was worth $255,060.

. There was some evidence that the parties had made two loans to someone named Bus-tamante but "they were received and paid during the marriage and split equally between the parties.”

. We note that the trial court found that the husband himself, and not the husband’s counsel, engaged in litigation misconduct. We also note that the husband’s appellate counsel did not represent him in the litigation below.

. The trial court found the following:
This is a four[-]year[-]old dissolution case with a history of contempt and sanctions against the [hjusband, who has willfully and repeatedly stalled litigation throughout the course of these proceedings; the [h]us-band has been forced to comply with mandatory discovery and disclosure by court order on several occasions (in addition to having repeatedly been found in contempt regarding his support obligations). Because of this well[-]documented history, the Court finds that the [w]ife is entitled to attomey[']s fees for this action, payable in full by the [h]usband, as a sanction for his behavior in litigation.