NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

THOMAS S. DEA, as personal )
representative of the Estate of Caroline )
S. Dea, deceased, )
           )
           Appellant, )
           )
v. )      Case No.  2D16-642
           )
PH FORT MYERS, LLC; PLATINUM )
HEALTH CARE, LLC; BENJAMIN )
KLEIN; and JOANNE P. SMITH (as to )
Lamplight of Fort Myers), )
           )
           Appellees. )
_____ )

Opinion filed January 13, 2017.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Lee County; Alane
C. Laboda, Judge.

Megan L. Gisclar and Isaac R. Ruiz-Carus
of Wilkes & McHugh, P.A., Tampa, for
Appellant.

Scott A. Cole and Lisette Gonzalez of Cole,
Scott & Kissane, P.A., Miami, for Appellees.


LaROSE, Judge.


        Thomas Dea, as personal representative of the Estate of Caroline Dea,

appeals a nonfinal order granting a motion to compel arbitration.  We have jurisdiction.

See Fla. R. App. P. 9.130(a)(3)(c)(iv).  The Estate contends that (1) there was no valid arbitration agreement between Mrs. Dea and Lamplight of Fort Myers, and (2) Douglas Dea, who signed the arbitration agreement as attorney-in-fact for his mother, Mrs. Dea, lacked authority to do so.  We reverse.

## Facts

Mrs. Dea was admitted to Emeritus of Fort Myers, an assisted living facility, in early 2013.  Thomas Dea, her son, held her durable power of attorney (POA).  The POA provided that "[i]f Thomas . . . resigns or is unable or unwilling to serve as my attorney-in-fact, I appoint [Dougles E. Dea] to serve as my successor attorney-in-fact."  Douglas Dea, Mrs. Dea's other son, signed Emeritus's admission documents as the "responsible party."  Among those documents, Douglas[1] signed a residency agreement and the arbitration agreement.  Notably, the arbitration agreement had no provision granting Emeritus's successors-in-interest the right to enforce it.

Sometime in 2014, Lamplight of Fort Myers acquired Emeritus.  Lamplight purported to amend the Emeritus residence and services agreement with Mrs. Dea.  The amendment provides that "[t]his document amends the residency agreement pertaining to your residency and receipt of services at Lamplight of Fort Myers made between Lamplight of Fort Myers and Caroline Dea ('Resident'), dated April 16, 2014."  The amendment replaces a fee summary in its entirety.  The amendment provides further that it "shall not modify any other section of the Residency Agreement, and all other provisions of the Resident Agreement, including any appendices and documents incorporated by reference, shall remain in full force and effect."  Our record contains no

---

[1]For ease, we will refer to the brothers by their first names.

April 16, 2014, residency agreement between Lamplight and Mrs. Dea. We can only assume that Lamplight attempted to amend the Emeritus admission documents and obtain the benefits of the arbitration agreement. As discussed below, it failed to do so.

Procedural History

Mrs. Dea sustained injuries while a resident at Lamplight. The Estate sued Lamplight, alleging violations of Florida's Assisted Living Facilities Act, chapter 429, Florida Statutes (2014). Lamplight moved to compel arbitration pursuant to the agreement Douglas signed when Mrs. Dea was initially admitted to Emeritus in 2013. In the trial court, Lamplight argued that the arbitration agreement was valid and enforceable. Lamplight also argued that the amendment to the residency agreement "reinforced and reestablished the validity of the documents previously entered between Douglas Dea and Emeritus, such that these documents were now made part of the agreement between the Lamplight . . . Appellees and Douglas Dea." Lamplight also contended that Douglas executed numerous documents on his mother's behalf, naming him as the primary contact person. The Estate argued that there was no valid arbitration agreement because (1) the arbitration agreement did not mention successors-in-interest, (2) Douglas was only the successor attorney-in-fact, and (3) Lamplight failed to demonstrate that Thomas had resigned or was unable or unwilling to serve under the POA.

The trial court granted the arbitration motion, finding that the amendment, in fact, amended the residency agreement between Mrs. Dea and Emeritus, including the arbitration agreement. The trial court also found that "Thomas . . . was unwilling to act as power of attorney [for Mrs. Dea] and it was appropriate for Douglas . . . to

execute admission paper work on behalf of [Mrs.] Dea, including but not limited to the subject arbitration agreement."

## Standard of Review

We review the order to compel arbitration de novo. See The Hillier Grp., Inc. v. Torcon, Inc., 932 So. 2d 449, 452 (Fla. 2d DCA 2006). "In determining whether a dispute is subject to arbitration, courts consider at least three issues: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Stacy David, Inc. v. Consuegra, 845 So. 2d 303, 306 (Fla. 2d DCA 2003); see also Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999).

## Analysis

### There Was No Valid Agreement to Arbitrate Between Lamplight and Mrs. Dea

"Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Rolls-Royce PLC v. Royal Caribbean Cruises Ltd., 960 So. 2d 768, 770 (Fla. 3d DCA 2007) (internal quotations omitted). "Generally, therefore, a non-signatory to a contract containing an arbitration agreement cannot compel a signatory to submit to arbitration." Id. Lamplight was not a party to the residency agreement between Emeritus and Mrs. Dea. Moreover, the arbitration agreement was silent as to whether successors-in-interest, such as Lamplight, could enforce the agreement.

"When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent." Heiny v. Heiny, 113 So. 3d 897, 900 (Fla. 2d DCA 2013) (quoting Murley v. Wiedamann, 25 So. 3d 27, 29 (Fla. 2d DCA 2009)). "Thus, when the terms of a voluntary contract are clear and unambiguous,

- 4 -

as here, the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995). Lamplight argues that the amendment allows it to enforce the Emeritus arbitration agreement; that is not what the amendment recites.

The amendment refers to an April 16, 2014, residency agreement between Lamplight and Mrs. Dea. No such document is in our record. Our record contains a signed residency agreement with Emeritus from February 2013. Neither party suggests that a residency agreement between Lamplight and Mrs. Dea was signed on April 16, 2014. Further, our record does not reflect that Lamplight obtained any rights to arbitrate claims asserted by Mrs. Dea, or her Estate, when it acquired Emeritus. Accordingly, the Estate is not bound to arbitrate with Lamplight.

Douglas Lacked Authority to Bind His Mother to Arbitration

Alternatively, we conclude that Douglas did not have the authority to sign the arbitration agreement under the POA. Lamplight offered no evidence that Thomas resigned or was unable or unwilling to serve as attorney-in-fact. The trial court's contrary finding is not supported by the record before us.

We frequently have held that it is error for the trial court to compel arbitration where the signatory lacked the authority to bind the resident to the agreement. See Carrington Place of St. Pete, LLC v. Estate of Milo ex rel. Brito, 19 So. 3d 340, 341-42 (Fla. 2d DCA 2009); McKibbin v. Alterra Health Care Corp., 977 So. 2d 612, 613 (Fla. 2d DCA 2008); see also Perry ex rel. Perry v. Sovereign Healthcare of Metro W., LLC, 100 So. 3d 146, 148 (Fla. 5th DCA 2012). There was insufficient

evidence to show that Douglas could have signed the arbitration agreement for his mother.

## Conclusion

We reverse the trial court's order to compel arbitration and remand for further proceedings.

Reversed and remanded.

LUCAS, J., Concurs.
BLACK, J. Concurs specially with opinion.

BLACK, Judge, Specially concurring.

I concur in the reversal of the order compelling arbitration because the majority correctly concludes that the arbitration agreement signed by Douglas was unenforceable. The agreement was not binding on Mrs. Dea or her Estate where there was no evidence that Douglas held the POA or otherwise had the authority to bind his mother to the arbitration agreement. In my view, the analysis begins and ends there.

See Mendez v. Hampton Court Nursing Ctr., LLC, 41 Fla. L. Weekly S394 (Fla. Sept. 22, 2016). Although I believe the analysis and conclusion to be unnecessary, the majority appears to conclude that even had the arbitration agreement been executed by someone with authority to bind Mrs. Dea it would not have been enforceable by Lamplight. I respectfully disagree.

I note that the appendices before this court do not contain the contract between Emeritus and Lamplight. However, we do have before us the resident agreement between Emeritus and Mrs. Dea which contains a provision allowing Emeritus to assign the agreement "to any successor-in-interest selected" by Emeritus. The amendment between Lamplight and Mrs. Dea, by its terms, replaces only the fee summary of the agreement and does not otherwise affect the terms of the agreement, "including any appendices and Documents incorporated by reference." Further, the arbitration agreement includes the following language: "To the fullest extent permitted by law, this Arbitration Agreement shall apply to third parties not signatories to this Agreement . . . . Any claims or grievances against [Emeritus's] corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Agreement." Based upon these documents, I cannot agree that had the arbitration agreement been binding upon Mrs. Dea it would still have been unenforceable by Lamplight. See generally Olson v. Fla. Living Options, Inc., 41 Fla. L. Weekly D2111 (Fla. 2d DCA Sept. 9, 2016); Fla. Power & Light Co. v. Rd. Rock, Inc., 920 So. 2d 201 (Fla. 4th DCA 2006). Given the language of the documents, it would be incongruous to conclude that the Estate's claims—had they been filed against Emeritus—would be subject to binding arbitration but because Lamplight purchased Emeritus those same claims are no longer arbitrable.