# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————————

INTEGRATED HEALTH SERVICES AT CENTRAL FLORIDA, INC.;
LYRIC HEALTH CARE HOLDINGS III, LLC; LYRIC HEALTH CARE, LLC;
LYRIC HC OPERATIONS ACQUISITION, LLC; CAPITAL FUNDING
GROUP, INC.; RIDGE CREST HEALTH CARE, LLC; ADDIT, LLC;
SLC PROFESSIONALS CHAI, LLC; SLC PROFESSIONALS HOLDINGS,
LLC; JOHN DWYER; and TIMOTHY NICHOLSON,

Appellants,

v.

ESTATE OF CAROL DeSANTIS, by and through
ANTHONY STEVEN DeSANTIS; SKYLINE HEALTH CARE, LLC a/k/a
SKYLINE HEALTHCARE, LLC; SKYLINE MANAGEMENT GROUP, LLC;
SUN ISLAND CAPITAL, LLC; SUN ISLAND HEALTHCARE, LLC; JOSEPH
SCHWARTZ; CLEAR WATER CARE AND REHABILITATION CENTER,
LLC; 703 SOUTH 29TH STREET SPE, LLC; LAUREL POINT CARE AND
REHABILITATION CENTER, LLC; WEST JACKSONVILLE CARE AND
REHABILITATION, LLC; ATLANTIC CARE AND REHABILITATION
CENTER, LLC; AUBURNDALE OAKS CARE AND REHABILITATION
CENTER, LLC: LAUREL POINT HOLDING, LLC; FC LENDING SUNSHINE,
LLC; PACIFIC WESTERN BANK CORPORATION; MONTANI INVESTORS,
LLC; ALAN J. ZUCCARI; SABRA HEALTH CARE HOLDINGS III, LLC;
SABRA HEALTH CARE LIMITED PARTNERSHIP; SABRA HEALTH CARE,
LLC; and SABRA HEALTH CARE REIT, INC.,

Appellees.

No. 2D2024-0660

———————————————————

March 19, 2025

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Pinellas County; Amy M. Williams, Judge.

Kenneth N. Johnson of Kenneth N. Johnson, P.L., Palm Beach Gardens, for Appellants.

James L. Wilkes, II, of Wilkes & Associates, P.A., Tampa (substituted as counsel of record), for Appellee Estate of Carol DeSantis, by and through Anthony Steven DeSantis.

No appearance for remaining Appellees.

ROTHSTEIN-YOUAKIM, Judge.

Integrated Health Services at Central Florida, Inc., et alia (collectively, Compass Pointe), appeal from an order denying a motion to compel arbitration of claims brought against it by the Estate of Carol DeSantis.[1]  Because the trial court failed to address whether Compass Pointe was entitled to arbitration in light of the broad language of the arbitration agreement or under the equitable estoppel doctrine, we remand for vacatur of the denial order.  Moreover, because both bases indeed entitle Compass Pointe to arbitration, the court on remand shall instead enter an order granting the motion.

In 2016 Carol DeSantis was admitted to Laurel Pointe Care and Rehabilitation Center, a nursing home.  Her stay was governed in part by the Resident and Facility Arbitration Agreement, which provided, in relevant part:

> It is understood and agreed by Laurel Pointe Health & Rehabilitation and Carol DeSantis, and/or Carol DeSantis, hereinafter collectively, the 'Resident') that *any legal dispute, controversy, demand or claim (hereinafter collectively referred to as "claim" or "claims") that arises out of or relates to the Resident Admission Packet or any service or health care*

---

[1] The Estate has divided its suit's defendants into two groups:  the Compass Pointe group and the Skyline group.  The Compass Pointe group comprises the appellants here.

2

*provided by the Facility to the Resident,* shall be resolved exclusively by binding arbitration . . . .

(Emphasis added.)

Three years after DeSantis's admission, her Estate sued Laurel Point Care and Rehabilitation Center, LLC[2]—which is the current operator of the nursing home—and multiple other entities and individuals, including Compass Pointe. According to the Estate's complaint, Compass Pointe originally owned and operated the nursing home (which was then known as Integrated Health Services at Central Florida, Inc.). Before DeSantis was admitted there, Compass Pointe sold the nursing home to the Skyline group. The Estate has alleged that at the time of that sale, Compass Pointe knew that the Skyline group was illegitimate and incapable of providing quality care to vulnerable nursing home residents and that it was thus foreseeable that DeSantis would suffer injuries while receiving care at the nursing home.

Based on these allegations, the Estate has brought two claims against Compass Pointe. First, it claims that Compass Pointe aided and abetted Laurel Point's breach of its fiduciary duty to DeSantis. The Estate specifically avers that Compass Pointe "substantially assisted and encouraged Laurel Point . . . in breaching the fiduciary duties it owed to its residents, including Carol DeSantis." Second, the Estate claims that Compass Pointe and the Skyline group civilly conspired "to participate in and further aid[] and abet[] the breach of the fiduciary duty" that Laurel Point owed to DeSantis.[3]

---

[2] The Estate includes Laurel Point Care and Rehabilitation Center, LLC, in the Skyline group of defendants.

[3] The Estate separately alleges that the Skyline group is liable for aiding and abetting Laurel Point's breach of its fiduciary duty and for violating section 415.1111, Florida Statutes (2006).

3

Compass Pointe moved to compel arbitration of those claims, arguing that although it was not a signatory to the arbitration agreement, it nonetheless could subject the Estate's claims against it to arbitration in light of the broad "arises out of or relates to" language included in that agreement and also on equitable estoppel grounds. Compass Pointe attached to its motion a copy of DeSantis's Resident and Facility Arbitration Agreement and also requested that the court take judicial notice of several documents, including the Admission Agreement between DeSantis and Laurel Pointe. That agreement provided, in part:

> 2.1 <u>Skilled</u> <u>Nursing</u> <u>Services</u>. Facility agrees to provide those basic items and services that Facility is licensed to provide and those items and services determined necessary by Resident's physician and health care team.

After a hearing, the trial court denied Compass Pointe's motion to compel arbitration, concluding that no agreement existed between it and DeSantis or the Estate because "[t]he language of the contract says that it applies to successors but does not state that it applies to predecessors" and, accordingly, the Compass Pointe defendants "are not parties to the contract."

Compass Pointe's nonparty status, however, is not dispositive. And in apparently concluding that it is, the trial court wholly failed to address Compass Point's arguments that even as a nonsignatory to the arbitration agreement, it was entitled to compel arbitration based either on the "arises out of or relates to" language of the agreement or on principles of equitable estoppel. Upon our de novo review, *see UATP Mgmt., LLC v. Barnes*, 320 So. 3d 851, 855 (Fla. 2d DCA 2021) (explaining that we review de novo an order denying a motion to compel

4

arbitration), we conclude that both bases indeed allow Compass Pointe to subject the Estate's claims to arbitration.[4]

"Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Pezeshkan v. Manhattan Constr. Fla., Inc.*, 313 So. 3d 948, 951 (Fla. 2d DCA 2021) (quoting *Dea v. PH Fort Myers, LLC*, 208 So. 3d 1204, 1207 (Fla. 2d DCA 2017)). Thus, as a general rule, nonsignatories to an arbitration agreement "cannot compel a signatory to submit to arbitration." *Id.* (quoting *Dea*, 208 So. 3d at 1207). But there are exceptions.

---

[4] We reject Compass Pointe's additional argument that the arbitrator—rather than the trial court—should have decided in the first instance whether Compass Pointe could enforce the arbitration agreement. For this argument, Compass Pointe relies heavily on *Laurel Point Care & Rehabilitation Center, LLC v. Estate of Desantis ex rel. Desantis*, 323 So. 3d 186, 187 (Fla. 4th DCA 2021). But although that appeal involved the same arbitration agreement, it involved a different issue—one that our sister court approached "as a challenge to the validity of the arbitration agreement or the arbitrability of the controversy" and concluded had been "clear[ly] and unmistakab[ly]" delegated to the arbitrator. *Id.* Here, in contrast, the issue before us is whether the Estate and Compass Pointe (an undisputed nonsignatory to the agreement) could be said to have agreed to anything at all—a question that remains within the purview of the trial court notwithstanding any delegation provision. *See Barnes*, 320 So. 3d at 856 ("There is a difference between a challenge to contract validity and a challenge to contract formation."); *Odum v. LP Graceville, LLC*, 277 So. 3d 194, 196 (Fla. 1st DCA 2019) (concluding that notwithstanding the existence of a delegation provision in the arbitration agreement, "it always remains the trial court's role to determine whether the parties entered into an agreement before enforcing that agreement by compelling arbitration"); *see also Shireman v. Tracker Marine, LLC*, No. 3:18-cv-740-J-34MCR, 2019 WL 13267902, at *9 (M.D. Fla. Mar. 12, 2019) ("[C]ourts, rather than arbitrators, must determine whether a non-signatory to a contract containing an arbitration agreement can compel a signatory to submit to arbitration" (collecting cases)).

5

One such exception "provides that arbitration provisions containing the language, 'arising out of or related to,' in certain instances can be construed to include non-signatories." *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 211 (Fla. 3d DCA 2003). Such language "broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013); *see also Olson v. Fla. Living Options, Inc.*, 210 So. 3d 107, 111 (Fla. 2d DCA 2016) ("Where an arbitration provision contains the words 'relating to' rather than just 'arising from' or 'arising out of' in reference to the claims covered, courts will construe the arbitration provision as having a broader scope." (citing *Kaplan v. Kimball Hill Homes Fla., Inc.*, 915 So. 2d 755, 759 (Fla. 2d DCA 2005))).

> [A] significant relationship is described to exist between an arbitration provision and a claim if there is a 'contractual nexus' between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship. In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public.

*Jackson*, 108 So. 3d at 593 (citations omitted).

Equitable estoppel principles underlie another exception that applies "when the signatory's claims allege 'substantially interdependent and concerted misconduct' by the signatory and the non-signatory."

6

*Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 767 (Fla. 1st DCA 2018) (citing *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004)); *see also Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633–34 (Fla. 4th DCA 2013) ("[T]he equitable estoppel exception to the general rule is 'warranted when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract.' " (quoting *Shetty v. Palm Beach Radiation Oncology Assocs.-Sunderam K. Shetty, M.D., P.A.*, 915 So. 2d 1233, 1235 (Fla. 4th DCA 2005))).

Here, Compass Pointe may subject the Estate's claims to arbitration under both exceptions. First, a significant relationship exists between those claims and the underlying contract given that resolution of those claims necessarily relies on reference to Laurel Point's contractual duties to DeSantis. As noted above, the Estate's third amended complaint alleges that Compass Pointe knowingly sold the nursing home to a buyer incapable of providing the services or care that it later contracted to provide for DeSantis. DeSantis's Estate now sues Compass Pointe for aiding and abetting that nursing home's breach of its fiduciary duty to DeSantis and for civilly conspiring with the Skyline group to aid and abet the nursing home's breach. At bottom, both claims center on whether Laurel Point owed a duty to DeSantis and, if so, whether it breached that duty. *See Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404, 412 (Fla. 2d DCA 2022) (noting that pleading a civil conspiracy claim requires that a plaintiff "identify an actionable underlying tort or wrong" (quoting *Plastiquim S.A. v. Odebrecht Constr., Inc.*, 337 So. 3d 1270, 1273 (Fla. 3d DCA 2022))); *Fonseca v. Taverna Imps., Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017) ("A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff

7

to establish: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."); *see also Bergeron Env't & Recycling, LLC v. LGL Recycling, LLC*, 398 So. 3d 988, 996 (Fla. 4th DCA 2024) ("If an underlying tort has not been established, a count for conspiracy to commit that tort will not lie." (citing *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. 4th DCA 2020))). The answers to those questions implicate duties not generally owed to the public but instead created by the unique contractual relationship between Laurel Point and DeSantis. *See Kaplan*, 915 So. 2d at 759 ("Where an arbitration agreement provides for the arbitration of disputes relating to a contract, '[t]ort claims based on duties that are dependent upon the existence of the contractual relationship between the parties are normally arbitrable.' " (quoting *Stacy David, Inc. v. Consuegra*, 845 So. 2d 303, 306 (Fla. 2d DCA 2003))); *Cooper v. Rehab. Ctr. at Hollywood Hills, LLC*, 305 So. 3d 3, 5 (Fla. 4th DCA 2020) (concluding that claims arose out of or were related to the contract in which rehabilitation center "agreed to provide nursing care at the facility in return for payment," the claims "ar[ose] out of failure to provide appropriate nursing care," and the claimant's "entire relationship with the [rehabilitation center was] based upon their agreement, and her claims involve[d] what she allege[d] that it failed to do in providing those services and protecting her"); *Five Points Health Care, Ltd. v. Alberts*, 867 So. 2d 520, 521 (Fla. 1st DCA 2004) ("Although pleading a number of rights granted by the statute, the operative portion of the complaint . . . alleges that a staff member of [the nursing home] negligently placed Mr. Alberts in a tub of hot water, causing him severe burns to both feet and his left leg. This alleged

8

malfeasance on the part of the nursing home staff can only be seen as arising out of, or relating to, the obligations taken on by the nursing home pursuant to . . . the Agreement for Care."). Thus the Estate's claims against Compass Pointe are premised on Laurel Point's contractually imposed duties to DeSantis and require reference to the Admission Agreement between those parties, thereby creating a significant relationship between the claims and the contract. Accordingly, Compass Pointe may compel the Estate to submit to arbitration of these claims based on the broad language of the arbitration agreement itself.

Moreover, Compass Pointe may compel arbitration under the equitable estoppel doctrine because both claims—aiding and abetting Laurel Point's breach and conspiring with the Skyline group to aid and abet Laurel Point's breach—necessarily entail concerted misconduct between Compass Point and signatory Laurel Point. *See Logan*, 350 So. 3d at 410, 412 (first quoting *Fonseca*, 212 So. 3d at 442; and then quoting *Plastiquim S.A.*, 337 So. 3d at 1273); *see also Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 970 (Fla. 3d DCA 2010) (holding that nonsignatory defendants may compel arbitration given that conspiracy claim raised "allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract" (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogation on other grounds recognized by Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079 (11th Cir. 2024))); *cf. Bergeron Env't & Recycling, LLC*, 398 So. 3d at 995 (concluding that equitable estoppel allowed nonsignatory alleged to have aided and abetted and conspired to aid and abet a breach of a signatory's

9

fiduciary duty to enforce the jury waiver agreement entered into by plaintiff and signatory).

Accordingly, we reverse the trial court's order denying arbitration and remand for vacatur of that order and entry of an order that instead stays the proceedings and discovery and grants Compass Pointe's motion to compel.

Reversed and remanded with directions.

KHOUZAM and BLACK, JJ., Concur.

———————————————————

Opinion subject to revision prior to official publication.