EMAS, J.
Defendant/Appellant CarePlus Health Plans, Inc. (“CarePlus”) appeals from the lower court’s order denying a motion to compel arbitration of the claims brought by Plaintiff/Appellee Interameriean Medical Center Group, LLC (“Interameriean”).
Interameriean operates medical centers in South Florida that treat patients through licensed healthcare professionals. CarePlus is a state-licensed Health Maintenance Organization that has a contract with the federal Centers for Medicare and Medicaid Services (“CMS”) to provide medical services.
CarePlus and Interameriean entered into a Primary Care Agreement in 2004 (the “2004 Agreement”). Under that contract, Interameriean treated CarePlus’s Medicare Advantage members pursuant to a “risk capitation” arrangement in which CarePlus agreed to cede to Interameriean a portion of the premium it received from CMS in exchange for treatment. The 2004 Agreement does not contain any provision regarding arbitration of disputes arising out of the 2004 Agreement. It does, however, contain a provision that actions both at law and in equity are to be commenced and maintained exclusively in Miami-Dade County, as well as a provision that the 2004 Agreement “may not be amended, supplemented, waived or changed orally or by course of conduct of the parties but only by a written and signed document by the party by whom enforcement is sought and which shall make specific reference to this Agreement.” (Emphasis added).
Six years later, in 2010, Interameriean entered into the Independent Practice Association Participation Agreement (the “2010 Agreement”) with Humana Insurance Company, Humana Health Insurance Company of Florida, Inc., and Humana Medical Plan, Inc. (collectively “Humana”). Included in the “Humana” designation were affiliates of the specifically named Humana entities “that underwrite or administer health plans.” CarePlus was not a signatory to the 2010 Agreement but is alleged to be an “affiliate” of Humana. The 2010 Agreement contains the following arbitration provision:
Agreement to Arbitrate. The parties agree that any dispute arising out of them business relationship which cannot be settled by mutual agreement shall be submitted to final and binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association (“AAA”), including disputes concerning the scope, validity, or applicability of this agreement to arbitrate (“Arbitration Agreement”). The parties agree that this Arbitration Agreement is subject to, and shall be interpreted in accordance with, the Federal Arbitration Act, 9 U.S.C. §§ 1-14. No claim or allegation shall be excepted from this Arbitration Agreement, including alleged breaches or the [2010] Agreement. .. .The parties agree to arbitrate disputes arising from the parties’ business relationship prior to the effective *971 date of the [2010] Agreement under the terms of this arbitration provision....
CarePlus terminated the 2004 Agreement on or about August 81, 2011. In March of 2012, CarePlus provided Inter-american with a final reconciliation of the amounts it owed to Interamerican under the 2004 Agreement. Interamerican disputed the reconciliation and filed suit against CarePlus on March 13, 2013. Count I of that complaint seeks damages from CarePlus for CarePlus’s alleged breach of the 2004 Agreement. Count II seeks an accounting from CarePlus.
Instead of answering the complaint, Ca-rePlus filed a motion to compel arbitration. In its motion, CarePlus acknowledged that the 2004 Agreement did not include an arbitration provision but asserted it was entitled to arbitration of the 2004 Agreement pursuant to the arbitration provision of the 2010 Agreement. CarePlus argued it was (i) included in the 2010 Agreement’s definition of parties to the Agreement because it underwrites/administers health plans and was an affiliate of one or more of the specifically named Humana entities; (ii) the 2010 Agreement’s arbitration provision encompassed any dispute the parties had arising out of their “business relationship,” and (iii) the 2004 contract claims asserted in the lawsuit arise out of the overall business relationship between Ca-rePlus and Interamerican.
Interamerican opposed the motion on the basis that the lawsuit did not involve Humana or the 2010 Agreement, that the 2004 Agreement contained no arbitration provision, and that the parties never intended to arbitrate disputes under the 2004 Agreement.
The trial court held a hearing on Care-Plus’s arbitration motion, at the conclusion of which the court entered an order denying the motion. This appeal followed.
We review de novo the court’s determination on a motion to compel arbitration. Turner Const. Co. v. Advanced Roofing, Inc., 904 So.2d 466 (Fla. 3d DCA 2005).
This ease rests upon whether the arbitration clause contained in the 2010 Agreement between Humana and Interamerican is sufficient to compel[1] arbitration of the disputes between Interamerican and Care-Plus arising out of the 2004 Agreement.
Generally, three elements must be considered in ruling on a motion to compel arbitration: “(1) whether a valid arbitration agreement exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived.” Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). ‘Whether an arbitration clause requires arbitration of a particular dispute depends on'the intent of the parties to the contract.” Id. Florida law and public policy strongly favor arbitration and are encouraged to resolve doubts in favor of arbitration. Id.
The parties do not dispute that the issue for which Interamerican brings action against CarePlus is a breach of the 2004 Agreement, namely the payment terms of that Agreement. Nonetheless, CarePlus contends the language of the arbitration clause in the 2010 Agreement governs the 2004 Agreement and compels arbitration of a dispute involving an alleged breach of the 2004 Agreement. We do not agree.
Here, the two agreements were executed six years apart by different signatories. The signatories to the 2004 Agreement are Interamerican and CarePlus, whereas the signatories to the 2010 Agreement are In- *972 teramerican and Humana.[1] Most significantly, the 2004 Agreement contains a provision that the 2004 Agreement “may not be amended, supplemented, waived or changed orally or by course of conduct of the parties but only by a written and signed document by the party by whom enforcement is sought and which shall make specific reference to this Agreement.”
Thus, under the terms of the 2004 Agreement, Interamerican and CarePlus evidenced no intent to arbitrate disputes arising from the 2004 Agreement, and prohibited modification of its terms unless in writing and specifically referencing the 2004 Agreement. The 2010 Agreement does nothing to alter the parties’ intent, and the general language in the 2010 Agreement to “arbitrate disputes arising from the parties’ business relationship pri- or to the effective date of the [2010] Agreement” falls short of the express requirement in the 2004 Agreement that any modification of its terms make “specific reference” to the 2004 Agreement.
CarePlus maintains, however, that because the 2010 Agreement contains a valid and broad arbitration provision—including language that any dispute regarding the provision’s scope or applicability is to be determined in arbitration—the question of whether that provision compels arbitration of disputes under the 2004 Agreement is merely one of scope and should therefore be determined by the arbitrator rather than the trial court. See Mercedes Homes, Inc. v. Rosario, 920 So.2d 1254 (Fla. 2d DCA 2006)(holding the issue of arbitrability was a question for the arbitrator because the agreement provided that the parties would arbitrate any dispute over the scope of the arbitration.)
Even if we were persuaded that the question of the application of the 2010 Agreement’s arbitration provision to the 2004 Agreement is one of scope, CarePlus fails to meet the second prong of Seifert— whether an arbitrable issue exists. To satisfy this prong, there must exist a significant relationship between the claim and the agreement containing the arbitration clause. Seifert, 750 So.2d at 637-38.
As the Seifert Court observed:
[E]ven in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause.
Id. at 638.
The Florida Supreme Court recently expounded on the requirement of a “significant relationship” or “nexus” in this context:
A “significant relationship” between a claim and an arbitration provision does not necessarily exist merely because the parties in the dispute have a contractual relationship. Rather, a significant relationship is described to exist between an arbitration provision and a claim if there is a “contractual nexus” between the *973 claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract.
Jackson v. Shakespeare Found., Inc., 108 So.3d 587, 593 (Fla.2013) (internal citations omitted).
This prong CarePlus cannot meet, as there is no nexus between the 2010 Agreement and the claims in dispute. The dispute revolves around the terms, and the alleged breach, of the 2004 Agreement. In attempting to establish the claims asserted in its complaint, Interamerican need not rely upon, refer to, construe or introduce any portion of the 2010 Agreement. In order to be arbitrable, the claim “must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the [2010] contract itself.” Seifert, 750 So.2d at 638. The absence of any identifiable nexus or significant relationship between the 2010 Agreement and the claims arising out of the 2004 Agreement is fatal to the position taken by CarePlus, and the trial court properly denied the motion to compel arbitration.
Affirmed.

. CarePlus contends that because the designation of Humana in the 2010 Agreement includes Humana entities "that underwrite or administer health plans” (and therefore includes CarePlus), it can enforce arbitration as a member of the identified class of parties to that agreement. We need not, and therefore do not, reach this secondary issue of whether CarePlus, as an affiliate of Humana, can seek to compel arbitration of the 2004 Agreement by way of the 2010 Agreement to which it was neither a party nor a signatory. See Henderson v. Idowu, 828 So.2d 451 (Fla. 4th DCA 2002)(holding that a non-signatory to an arbitration agreement is entitled to its benefits as a third party beneficiary of that agreement).