NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

VENITA L. OLSON, as personal )
representative of the Estate of Claire W. )
Olson, deceased, )
)
     Appellant, )
)
v. )     Case No. 2D15-5687
)
FLORIDA LIVING OPTIONS, INC.; )
SECOND FLORIDA LIVING OPTIONS, )
LLC; and VERNON J. ZEGER (as to )
HAWTHORNE HEALTH & )
REHABILITATION CENTER OF )
BRANDON), )
)
     Appellees. )
_____ )

Opinion filed September 9, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Hillsborough
County; William P. Levens, Judge.

Megan L. Gisclar, Isaac R. Ruiz-Carus, and
Lydia D. Wardell of Wilkes & McHugh, P.A.,
Tampa, for Appellant.

Donna J. Fudge, Connolly C. McArthur, and
Rebecca O'Dell Townsend of Fudge &
McArthur, P.A., St. Petersburg, for
Appellees.


CASANUEVA, Judge.

Venita Olson, as personal representative of the Estate of Claire Olson, appeals a nonfinal order granting a motion to compel arbitration of an action filed against appellees Second Florida Living Options (the SNF), a skilled nursing facility doing business as Hawthorne Health and Rehabilitation; parent company Florida Living Options; and administrator Vernon Zeger (collectively the SNF defendants). The Estate filed an action against the SNF defendants alleging various claims of negligence and breach of duty during Mr. Olson's stay at the SNF. The SNF defendants sought to compel arbitration based on an arbitration agreement signed when Mr. Olson became a resident of Hawthorne Inn of Brandon (the ALF), an assisted living facility located in the same retirement community, Hawthorne Village. Because we conclude that the claims raised by the Estate in its action against the SNF defendants are not within the scope of the arbitration agreement, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

On or about January 13, 2015, the Estate filed suit against the SNF defendants, alleging that Mr. Olson sustained injuries during his residency at the SNF. In response to the complaint, the SNF defendants filed a motion to compel arbitration, relying on an arbitration agreement that was entered into when Mr. Olson was admitted to the ALF on March 13, 2013.

> The arbitration agreement states that it is made
>
> by and between the Parties, Resident Claire Olson . . . and the Facility Hawthorne Inn of Brandon, its management, affiliates, subsidiaries, joint ventures and joint venture partners, employers, employees, owners, officers, directors, administrators, partners, members and incorporators, and all other persons natural or corporate in privity with them, (hereafter referred to collectively as "Facility"), [and] is an

Agreement intended to require that Disputes (as defined below) be resolved by binding Arbitration.

Paragraph II of the arbitration agreement defines "Disputes" as follows:

This Arbitration Agreement shall apply to and include within its scope any and all claims or controversies arising out of or in any way relating to this Agreement, the Admission Agreement or any of the Resident's stays at this Facility, including, but not limited to, any claims for breach of fiduciary duty, fraud or misrepresentation, common law or statutory negligence, gross negligence, malpractice or any other claims based on any departure from accepted standards of medical or nursing care (including any personal injury or wrongful death claims) and any claims involving breach of contract, payment, non-payment, or refund for services rendered to the Resident by the Facility (referred to collectively herein as "Disputes").

The Admission Agreement referenced above is a lease agreement between Mr. Olson and the ALF, entered into on March 13, 2013, contemporaneously with the arbitration agreement.

Paragraph II goes on to state:

It is further contemplated between the Resident and the Facility that the Resident may be transferred to and from the facility during the course of this residency and may be readmitted to the Facility after discharge. As such it is understood and intended that this Arbitration Agreement applies to this and all future admissions by the Resident to the facility.

The SNF defendants presented evidence of their affiliation with the ALF as part of the same retirement community. For example, Vernon Zeger is the administrator of both the SNF and the ALF, and Florida Living Options is the sole member of both the SNF and the ALF. However, it was undisputed that the ALF and the SNF are separate facilities with separate admissions procedures.

- 3 -

After an evidentiary hearing, the trial court granted the motion to compel arbitration, relying in large part on the future admission language in paragraph II of the arbitration agreement. The trial court found that the arbitration agreement specifically "applies to the then-current <u>and all future admissions to the facility</u>," and the trial court rejected any contention "that the absence of a separate, stand-alone arbitration agreement for Mr. Olson's subsequent admission to the skilled nursing facility requires denial" of the motion to compel.

## II. LAW AND ANALYSIS

In determining whether to grant a motion to compel arbitration, there are three elements the court must consider: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." <u>Seifert v. U.S. Home Corp.</u>, 750 So. 2d 633, 636 (Fla. 1999); <u>see also</u> <u>Global Travel Mktg., Inc. v. Shea</u>, 908 So. 2d 392, 398 (Fla. 2005). "The intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration. Courts generally favor such provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration." <u>Jackson v. Shakespeare Found., Inc.</u>, 108 So. 3d 587, 593 (Fla. 2013) (citation omitted).

### A. Parties to the arbitration agreement

In this case, the Estate challenged the first and second <u>Seifert</u> elements, arguing that the arbitration agreement signed when Mr. Olson entered the ALF cannot be utilized by the SNF defendants to force arbitration of the claims raised in this lawsuit. As a general rule, "a non-signatory to a contract containing an arbitration agreement

cannot compel a signatory to submit to arbitration." Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc., 158 So. 3d 644, 646 (Fla. 3d DCA 2014) (quoting Rolls-Royce PLC v. Royal Caribbean Cruises LTD., 960 So. 2d 768, 770 (Fla. 3d DCA 2007)). However, a nonsignatory may invoke an arbitration provision where the nonsignatory falls within an identified class of persons expressly intended to benefit from the arbitration agreement, i.e., a third-party beneficiary. Henderson v. Idowu, 828 So. 2d 451, 452-53 (Fla. 4th DCA 2002).

In Henderson, Idowu signed an employment agreement which contained an agreement to submit to arbitration all claims and disputes related in any way to his employment or termination of his employment with Tenet (the parent company of his employer FMC) or its employees. Id. at 452. Though appellant was a nonsignatory to the arbitration agreement, she was deemed to be entitled to its benefits as a third-party beneficiary and thus entitled to invoke the arbitration provision.

> The arbitration agreement here, although between [Idowu] and FMC, was expressly intended to benefit an identified class of persons, i.e., an employee of Tenet or one of its affiliated companies or entities. Appellant fell within the identified class and, thus, she may benefit from the agreement as a third-party beneficiary.

Id. at 452-53 (footnote omitted). The court further concluded that the claims asserted by Idowu were "based upon the precise matter which was agreed to be submitted to arbitration." Id. at 453.

In this case, the arbitration agreement provides as follows regarding third-party beneficiaries:

> The Parties intend that this Agreement shall inure to the direct benefit of and bind the Facility, its owner(s), affiliates, subsidiary companies, landlords, managers, officers,

employees, consultants, contract service providers, agents, attorneys, representatives, or other stakeholders . . . .

The SNF defendants argue that they presented competent, substantial evidence that they are intended third-party beneficiaries of the arbitration agreement based on their relationship with the ALF and thus, even if not named parties to the arbitration agreement, they are intended direct beneficiaries.

Assuming without deciding that the SNF defendants fall within a class of intended third-party beneficiaries to the arbitration agreement, our analysis does not stop there. We must consider whether the claims asserted against the SNF defendants in this cause of action are within the scope of the arbitration agreement, i.e., matters which were agreed to be submitted to arbitration. See id. It is on this point that the SNF defendants cannot prevail.

## B. Scope of the arbitration agreement

Whether or not an arbitrable issue exists is determined by the scope of the particular arbitration provision, and determination of the scope "requires consideration of the relationship between the contract and the claim at issue." Kaplan v. Kimball Hill Homes Fla., Inc., 915 So. 2d 755, 759 (Fla. 2d DCA 2005). Where an arbitration provision contains the words "relating to" rather than just "arising from" or "arising out of" in reference to the claims covered, courts will construe the arbitration provision as having a broader scope. Id. "The addition of the words 'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract . . . ." Jackson, 108 So. 3d at 593.

> [A] significant relationship is described to exist between an arbitration provision and a claim if there is a "contractual nexus" between the claim and the contract. A contractual

> nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship.

Id. (citations omitted).

In CarePlus Health Plans, Inc. v. Interamerican Medical Center Group, LLC, 124 So. 3d 968 (Fla. 3d DCA 2013), CarePlus and Interamerican entered into a contract in 2004 requiring payment of certain amounts from CarePlus to Interamerican; that contract did not contain an arbitration provision. In 2010, Interamerican entered into a separate agreement with Humana. Included within the "Humana" designation were "affiliates" of the named Humana entities. Id. at 970. Unlike the 2004 contract, the 2010 contract contained an arbitration clause; the clause was broad in scope and applied retroactively. Id. at 972.

CarePlus, asserting that it was an affiliate of Humana, sought to compel arbitration of an action filed by Interamerican alleging breach of the 2004 contract. The Third District rejected CarePlus's argument that it was entitled to enforce the 2010 arbitration provision against Interamerican.[1] First, the court noted that the 2004 contract allowed amendment only by writing that made specific reference to the 2004 contract, which the Humana contract did not do. Additionally, the court found that CarePlus failed to establish the existence of an arbitrable issue, noting: "[E]ven in contracts containing

---

[1]The court declined to reach the issue of whether CarePlus, as an "affiliate" of Humana, and therefore a member of the identified class of parties to the 2010 agreement, "can seek to compel arbitration of the 2004 Agreement by way of the 2010 Agreement to which it was neither a party nor a signatory." Careplus Health Plans, 124 So. 3d at 972 n.1.

broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." Id. at 972 (quoting Seifert, 750 So. 2d at 638). The court concluded that CarePlus was unable to satisfy this prong,

> as there is no nexus between the 2010 Agreement and the claims in dispute. The dispute revolves around the terms, and the alleged breach, of the 2004 Agreement. In attempting to establish the claims asserted in its complaint, Interamerican need not rely upon, refer to, construe or introduce any portion of the 2010 Agreement.

Id. at 973.

In Sunsplash Events Inc. v. Robles, 150 So. 3d 1194 (Fla. 4th DCA 2014), Robles entered into an employment agreement with Sunsplash. The employment agreement included a noncompete provision, prohibited Robles from owning a competing business, and required arbitration of "all differences, claims or matters of dispute relating to the performance of duties and/or benefits arising between the Parties to this Agreement contained herein." Contemporaneous with executing the employment agreement, the parties entered into a bill of sale agreement whereby Robles sold his current business assets to Sunsplash. The bill of sale agreement required that Robles cease and desist the operation of his business. That agreement contained no arbitration provision. Id. at 1195-96.

The Fourth District found that the arbitration provision was broad and concluded that the bill of sale claims asserted in Robles' complaint fell within the scope of the employment agreement's arbitration provision. The complaint alleged that Sunsplash failed to pay Robles under both the employment agreement and the bill of

sale agreement and that Robles was fraudulently induced into both agreements. The court noted that "resolution of the plaintiff's claims relating to the bill of sale agreement requires the construction and consideration of duties arising under the employment agreement," such as the cease and desist obligation in the bill of sale agreement and the noncompete obligations in the employment agreement. Id. at 1198. The court found that the claims relating to the bill of sale agreement "have a significant relationship to the claims relating to the employment agreement" and "are inextricably intertwined with the transaction from which the employment agreement emanated and the employment agreement itself." Id.

Turning to the language of the arbitration agreement at issue here, the arbitration agreement states that it "appl[ies] to and include[s] within its scope any and all claims or controversies arising out of or in any way relating to this Agreement, the Admission Agreement or any of the Resident's stays at this Facility." The agreement is broad in scope in that it includes the language "arising out of or in any way relating to." However, the scope covers claims and controversies arising out of or relating to the arbitration agreement,[2] the ALF Admission Agreement, or any of Mr. Olson's stays at "this Facility." The facility named in both the arbitration agreement and the Admission Agreement is Hawthorne Inn of Brandon, the ALF.

The Admission Agreement is the residency agreement whereby the ALF leased a suite to Mr. Olson. It makes reference to and was signed contemporaneously with the arbitration agreement. By contrast, a separate "Contract" was entered into

[2]The SNF defendants did not argue below that the dispute over arbitrability should be resolved by arbitration rather than the court.

- 9 -

when Mr. Olson was later admitted to the SNF on March 19, 2013, and that Contract neither includes nor references an arbitration provision.

There is no dispute that the claims alleged in the complaint are based on Mr. Olson's stay at the SNF, not the ALF. The SNF defendants do not argue, and there are no facts in our record to suggest, that the claims alleged in the complaint against the SNF defendants have any nexus to the ALF Admission Agreement or Mr. Olson's stay at the ALF. Under these facts, we must reject the SNF defendants' argument that the scope of disputes covered by the arbitration agreement includes claims relating not only to Mr. Olson's stay at the ALF but also to his stay at any of the ALF's unnamed affiliates.

Finally, we note that the language applying the arbitration agreement to "this and all future admissions by the Resident to the facility," relied on by the trial court in granting the motion, is inapplicable. The claims here do not involve a readmission to the ALF but an admission to the SNF, which the parties agree is a separate facility.

### III. CONCLUSION

The resolution of the claims asserted in the complaint does not require either reference to, or construction of, a portion of the ALF Admission Agreement, and the SNF defendants have not claimed that such a link exists. The claims asserted by the Estate arise out of and are related to Mr. Olson's stay at the SNF and have no nexus to the ALF Admission Agreement or Mr. Olson's stay at the ALF. Accordingly, we conclude that the Estate's claims against the SNF defendants do not fall within the scope of the arbitration agreement, and the trial court erred in granting the motion to compel arbitration.

Reversed and remanded for further proceedings.

VILLANTI, C.J., and LUCAS, J., Concur.