Ursula Ungaro
THIS CAUSE comes before the Court upon the Report and Recommendation, issued by Magistrate Judge John O'Sullivan on March 26, 2019 (D.E. 39). Judge O'Sullivan recommended that the Court deny Defendant Medica Healthcare Plans, Inc.'s Motion to Compel Arbitration and Stay the Litigation (D.E. 9).
The Parties' objections to the Report were due by April 9, 2019, and neither party has filed objections. See LoConte v. Dugger , 847 F.2d 745 (11th Cir. 1988), cert. denied , 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988) (holding that failure to file timely objections bars the parties from attacking factual findings on appeal). The matter is thus ripe for disposition.
THIS COURT has made a de novo review of the entire file and record herein, and, being otherwise fully advised in the premises, it is hereby
ORDERED and ADJUDGED that the Magistrate Judge O'Sullivan's Report and Recommendation, (D.E. 39), is RATIFIED, AFFIRMED and ADOPTED. Defendant Medica Healthcare Plans, Inc.'s Motion to Compel Arbitration and Stay the Litigation (D.E. 9) is DENIED. It is further
ORDERED AND ADJUDGED that Defendant Medica Healthcare Plans, Inc. SHALL file its Answer to the Complaint no later than Wednesday, May 8, 2019 .
DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of April, 2019.
REPORT AND RECOMMENDATION
JOHN J. O'SULLIVAN, CHIEF UNITED STATES MAGISTRATE JUDGE
THIS MATTER comes before the Court on the defendant, Medica Healthcare Plans, Inc.s' Motion to Compel Arbitration and Stay the Litigation (DE# 9, 1/4/19). This matter was referred to the undersigned *1301 by the Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida (DE# 14, 1/8/19). Having carefully considered the motion, the Plaintiffs' Response in Opposition to Defendant's Motion to Compel Arbitration [D.E. 9] (DE# 18, 1/18/19) and the defendant Medica Healthcare Plans, Inc's Reply in Support of Motion to Compel Arbitration and Stay the Litigation, the parties' exhibits, the court file and the applicable law, the undersigned recommends that the defendant Medica Healthcare Plans, Inc.s' Motion to Compel Arbitration and Stay the Litigation (DE# 9, 1/4/19) be DENIED.
I. INTRODUCTION
The plaintiffs, Baptist Hospital of Miami, Inc., South Miami Hospital, Inc., Doctors Hospital, Inc., Homestead Hospital, Inc., and West Kendall Hospital, Inc. (collectively "plaintiffs" or "Baptist Hospitals") filed an action in state court against the defendant to recover more than $ 800,000 for alleged medically necessary and covered services provided to Medicare beneficiaries enrolled in Medica's Medicare Advantage plans ("Medica Members") between January 2017 and January 2018 pursuant to the Medical Hospital Provider Agreement with an effective date of January 1, 2005 between the defendant and the plaintiff hospitals ("2005 Medica Hospital Provider Agreement"). The plaintiffs allege four counts in their complaint: 1) breach of contract (Count I), unjust enrichment/breach of implied-in-law contract (Count II), promissory estoppel (Count III), and claim for benefits under contract by assignee (Count IV).
The defendant, Medica Healthcare Plans, Inc. ("defendant" or "Medica") removed the action to federal court pursuant to the Federal Officer Statute because Medica claims it was acting on behalf of the Centers for Medicare and Medicaid Services as a Medicare Advantage Organization ("MAO") and that the Court has supplemental jurisdiction over any related state law claims.
The defendant argues that the plaintiffs' claims are subject to mandatory arbitration pursuant to a provision in the 2005 Medical Hospital Provider Agreement that requires the plaintiffs to comply with any manuals or publications maintained by Medica, as amended and revised from time to time. Medica contends that the current and operative manual that applies to contracted providers for members of Medicare Advantage plans generally, and Medica Members specifically, is the 2018 UnitedHealthcare Care Provider Administrative Guide (the "2018 UHC Provider Guide") which contains an arbitration provision. Baptist Hospital maintains that the operative manual for its claims is the 2017 UHC Provider Guide, which does not contain an arbitration provision, because Baptist Hospitals' claims pre-date the April 1, 2018 effective date of the 2018 UHC Provider Guide.
Baptist Hospitals oppose arbitration on three grounds: 1) the 2005 Medica Hospital Provider Agreement does not contain an arbitration provision; 2) the 2018 UHC Provider Guide is an unenforceable modification to the 2005 Medica Hospital Provider Agreement; and 3) the 2018 UHC Provider Guide does not cover the benefit claims at issue because Baptist Hospitals' claims predate its effective date of April 1, 2018 and the 2017 UCH Provider Guide does not contain an arbitration provision.
II. FACTUAL BACKGROUND
In its Complaint that was filed in state court on November 14, 2018, Baptist Hospitals seek payment for denied benefit claims for services provided to Medicare beneficiaries pursuant to the 2005 Medica *1302 Hospital Provider Agreement with Medica. Baptist Hospitals allege that the 2005 Medica Hospital Provider Agreement "obligated Medica to 'compensate [the Hospitals] for [Covered] Services furnished to [Medica's] members pursuant to this agreement and the rates and charges set forth [in it]." Complaint at ¶ 8 (DE# 1-1, 12/28/18). Baptist Hospitals seek to recover approximately $ 800,000 for claims between January 2017 and January 2018 for the alleged medically necessary and covered services provided to Medica Members. See Complaint at ¶¶ 13-101 (DE# 1-1, 12/28/18).
It is undisputed that the 2005 Medica Hospital Provider Agreement does not contain an arbitration provision. See Motion at 5 (DE# 9, 1/4/19). Medica relies on Section 3.2 of the 2005 Medica Hospital Provider Agreement, which implicitly incorporates the definition of "Hospital Manual" found in Section 1.24, and states:
3.2 Cooperation and Compliance. Provider agrees to use commercially reasonable efforts to cooperate with Plan's policies and procedures, including, without limitation, the Hospital Manual, the Peer Review/Quality Management Program, the Quality Assurance and Utilization Management Program. Provider will use best efforts to reasonably cooperate with the aforementioned policies and programs to the extent they do not conflict with the terms of this Agreement, are not in conflict with Provider's policies and procedures or do not require Provider to increase staffing levels as a result of changes in Plan's policies, procedures and rules. Provider and Plan agree to abide by all applicable Laws.
2005 Medica Hospital Provider Agreement § 3.2 (DE# 9-2, 1/4/19). The 2005 Medica Hospital Provider Agreement defines "Hospital Manual" in Section 1.24 as follows:
1.24 "Hospital Manual" means the publication maintained by Plan containing instructions and policies applicable to all of its Participating Hospitals, as amended and revised from time to time by Plan in its discretion. A hospital manual has been furnished to [Baptist Hospitals]. Provider shall reasonably cooperate with the provisions of the Hospital Manual provided the instructions and/or policies do not conflict with the terms of this Agreement or are not in conflict with Provider's policies and procedures. In the event of a conflict between any provision in the Hospital Manual and any provision in this Agreement, the terms of this Agreement shall govern.
2005 Medica Hospital Provider Agreement § 1.24 (DE# 9-2, 1/4/19).
Section 3.11 of the 2005 Medica Hospital Provider Agreement does not reference arbitration but provides:
3.11 Grievances and Disputes
Subject to any remedy provided by Law or this Agreement, Provider agrees to use commercially reasonable efforts to reasonably cooperate with [Medica's] Medicare Member Grievance procedures, as enacted by Plan from time to time, including all appeal and expedited appeal processes.
Response at 6 (DE# 18, 1/18/19) (represented as quoting redacted 2005 Medica Hospital Provider Agreement § 3.11 (DE# 9-2, 1/4/19) ).[1]
The general section of the 2018 UHC Provider Guide contains the arbitration provision at issue and provides:
*1303 Resolving Disputes - Concerns or Complaint
If you disagree with the outcome of any claim appeal, or for any other dispute other than claim appeals, you may pursue dispute resolution.
If your concern/complaint is regarding:
• Your relationship with us, then send a letter containing the details to the address listed in your agreement with us. A representative will look into your complaint and try to resolve it through an informal discussion. If you disagree with the outcome of this discussion, an arbitration proceeding may be filed.
• Our administrative procedures, then follow the dispute procedures set forth in those benefit plans to resolve the concern or complaint. After following these procedures, if one of us remains dissatisfied, an arbitration proceeding may be filed as described below and in your agreement with us. For disputes regarding payment of claims, you must timely complete the claim reconsideration and appeal process as set forth in this guide prior to initiating arbitration.
• Your compliance with your provider agreement, then we will send you a letter containing the details. If we cannot resolve the complaint through informal discussions with you, an arbitration proceeding may be filed as described in your agreement with us. Arbitration proceedings will be held at the location described in your agreement with us, or if a location is not specified in your agreement, then at a location as described in the Arbitration Counties by Location section below.
2018 UHC Provider Guide, Ch. 9 Our Claims Process: Resolving Disputes - Concern or Complaint at p. 61 (DE# 9-3, 1/4/19) (emphasis added).
The 2018 UHC Provider Guide expressly states: "This guide is effective April 1, 2018 for physicians, healthcare professionals, facilities and ancillary providers currently participating in our commercial and Medicare networks...." Id. at p. i (DE# 9-3 at 3 of 271, 1/4/19). The 2018 UHC Provider Guide defines the use of certain terms in the guide including "provider" and states:
• "You," "your" or "provider" refers to any health care provider subject to this guide, inculding physicians, health care professionals, facilities and ancillary providers; except when indicated and all items are applicable to all types of health providers subject to this guide.
Id.
Additionally, the general section of the 2018 UHC Provider Guide states:
If there is an inconsistency between your agreement with us and this guide, your agreement controls (except where your agreement with us provides protocols for our affiliates). If those protocols are in a supplement to this guide, those protocols control for services you give to a member subject to that supplement.
Id.
The 2017 UHC Provider Guide does not contain an arbitration provision, but has the following section:
Resolving Disputes - Agreement, Concern, or Complaint
If you have a concern or a complaint about your relationship with us, send a letter containing the details to the address listed in your agreement. A representative will look into your complaint and try to resolve it through an informal discussion. If our internal process does not resolve the dispute, please refer to your agreement's dispute resolution section, if applicable, for more information.
2017 UHC Provider Guide p. 8 (DE# 18-1 at 14 of 53; 1/18/19).
*1304 III. STANDARD OF REVIEW
The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter consideration. Schriever v. Navient Solutions, Inc., 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014) (citing McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) ). Accordingly, in ruling on a motion to compel arbitration, the Court may consider matters outside of the four corners of the complaint. Mamani v. Sanchez Berzain, 636 F.Supp.2d 1326, 1329 (S.D. Fla. 2009).
"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001) (citing Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ). "Arbitration is a matter of contract, and the [Federal Arbitration Act] requires courts to honor parties' expectations." AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 1752, 179 L.Ed.2d 742 (2011). "Federal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." Employers Ins. of Wausau, 251 F.3d at 1322 (citing Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ; Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004) (explaining that "it is the role of courts to rigorously enforce agreements to arbitrate and to construe any doubt in favor of arbitrability") ). The [Federal] Arbitration Act [ ("FAA") ] established that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Mercury Construction, 460 U.S. at 24-25, 103 S.Ct. 927 (footnote omitted). The presumption in favor of arbitration "does not apply to disputes concerning whether an agreement to arbitrate has been made." Bazemore v. Jefferson Capital Sys, LLC, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting Dasher v. RBC Bank (USA), 745 F.3d 1111, 1115-16 (11th Cir. 2014) ). The determination of whether "an arbitration agreement exists at all is 'simply a matter of contract.' " Id. (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ); see, Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla. 1999) (citation omitted) ("[B]ecause arbitration provisions are contractual in nature, construction of such provisions and the contract in which they appear remains a matter of contract interpretation.").
"Under the [FAA], no party can be compelled to arbitrate unless that party has entered into an agreement to do so." Mercury Construction, 460 U.S. at 24-25, 103 S.Ct. 927 (citation omitted); see Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir. 1982) (The federal policy favoring arbitration "cannot stretch a contract beyond the scope originally intended by the parties."). State-law principles of contract law govern the determination of whether an arbitration agreement exists. Dasher v. RBC Bank (USA), 745 F.3d 1111 (11th Cir. 2014). Before the presumption in favor of arbitration applies, the court must "look for evidence that the parties 'objectively revealed an intent to submit the dispute to arbitration.' " Id. (quoting First Options, 514 U.S. at 944, 115 S.Ct. 1920 ).
"Under both federal statutory provisions and Florida's arbitration code," courts must consider three factors on a motion to compel arbitration: "1) whether *1305 a valid agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate was waived." Seifert, 750 So.2d at 636 ; see, Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Group, LLC, 124 So.3d 968, 971 (Fla. 3d DCA 2013). Only the first two factors are raised in the present motion to compel arbitration and will be addressed by the undersigned.
IV. ANALYSIS
A. Motion to Compel Arbitration
Medica argues that Baptist Hospitals' claims are subject to mandatory arbitration because the 2005 Medica Hospital Provider Agreement requires Baptist Hospitals to comply with any manuals or publications maintained by Medica, as amended or revised from time to time. Medica contends that the 2018 UHC Provider Guide is the current and operative manual that governs and requires Baptist Hospitals to arbitrate the claims at issue.
Baptist Hospitals argue three grounds for the Court to deny Medica's motion to compel arbitration, namely: 1) neither Baptist Hospitals nor Medica agreed to submit the claims at issue to mandatory and binding arbitration as evidenced by the lack of an arbitration provision in the 2005 Medica Hospital Provider Agreement; 2) the 2018 UHC Provider Guide is an unenforceable modification of their 2005 Medica Hospital Provider Agreement; and 3) even if Baptist Hospitals were bound by the 2018 UHC Provider Guide, the arbitration provision does not apply to Baptist Hospitals' claims that are based on non-payments that pre-date the effective date of the arbitration provision. Response at 2 (DE# 18, 1/18/19).
Because Baptist did not raise a waiver issue, the undersigned will address the first two factors only, namely whether a written arbitration agreement exists and if so, whether the subject claims are covered by the arbitration provision.
B. A Written Arbitration Agreement Exists
It is undisputed that the 2005 Medica Hospital Provider Agreement between Baptist Hospitals and Medica does not contain an arbitration provision. See Motion at 5 (DE# 9, 1/4/19); Reply at 4 (DE# 21, 1/25/19) (acknowledging that "the Medica Hospital Provider Agreement itself does not contain an arbitration agreement"); and Response at 4 (DE# 18, 1/18/19). Medica relies on the 2018 UHC Provider Guide, which contains the subject arbitration provision, and was promulgated by Medica's parent company, UnitedHealthcare ("UHC") pursuant to Sections 1.24 and 3.2 of the 2005 Medica Hospital Provider Agreement. The UHC Provider Guide became effective April 1, 2018 for healthcare providers already participating in UHC's commercial and Medicare networks. Motion at 5 (DE# 18, 1/18/19) (citing DE# 9-3, p. 3); see Response at 5 (DE# 18, 1/18/19).
The 2005 Medica Hospital Provider Agreement incorporated by reference written policies and procedures including the 2018 UHC Provider Guide, which was promulgated by Medica's parent company, United Healthcare. Baptist Hospitals expressly agreed in the 2005 Medica Hospital Provider Agreement that they "shall reasonably cooperate with the provisions of the Hospital Manual [as amended and revised by the Plan in its discretion] provided the instructions and/or policies are not in conflict with the terms of the this Agreement or are not in conflict with the Provider's policies and procedures." Reply at 2 (DE# 21, 1/25/19) (quoting 2005 Medica Hospital Provider Agreement § 1.24). Medica argues that Baptist Hospitals' only *1306 ground to oppose the application of any term in the 2018 UHC Provider Guide is if the term conflicts with another express term in the 2005 Medica Hospital Provider Agreement. Id.; see 2005 Medica Hospital Provider Agreement §§ 1.24 and 3.2 (DE# 9, 1/4/19). Medica contends that there is no conflict because the 2005 Hospital Provider Agreement does not contain a term requiring disputes to be resolved exclusively through litigation.
Medica argues further that the 2018 UHC Provider Guide is the applicable manual, which contains a general guide as well as a supplement for various plans. (DE# 9-3, p. 5). Medica contends that the Medica supplement in the 2018 UHC Provider Guide subjects providers, like Baptist Hospitals, to the general guide and the supplement and that the supplement governs only if in conflict with the general guide. Medica maintains that the general section of the 2018 UHC Provider Guide provides that the parties "may pursue dispute resolution." Motion at 6 (DE# 9, 1/4/19) (quoting Lubowitz Decl., Ex. 3 at p. 61). Under federal and Florida law, "the use of the word 'may' in an arbitration provision [means that] either party has the right to insist upon arbitration." Motion at 6 (quoting Conax Florida Corp. v. Astrium Ltd., 499 F.Supp.2d 1287, 1297 (M.D. Fla. 2007) ). Medica concludes that the arbitration provision in the 2018 UHC Provider Guide requires Baptist Hospitals to arbitrate their subject claims.
Baptist Hospitals contend that the arbitration in the 2018 UHC Provider Guide is contradicted by Section 3.11 of the 2005 Medica Hospital Provider Agreement, which provides:
3.11 Grievances and Disputes
Subject to any remedy provided by Law or this Agreement, Provider agrees to use commercially reasonable efforts to reasonably cooperate with [Medica's] Medicare Member Grievance procedures, as enacted by Plan from time to time, including all appeal and expedited appeal processes.
2005 Medica Hospital Provider Agreement § 3.11 (DE# 9-2) (emphasis provided).
Baptist Hospitals argue that the Medica Supplement, which starts on page 139 of the 2018 UHC Provider Guide, lacks any provision requiring Baptist Hospitals or any other Medica provider to submit disputes to arbitration. Id. (citing DE# 9-3, pp. 145-56). Instead, Medica argues that the section titled "Resolving Disputes - Concerns or Complaints" in the general terms of the 2018 UHC Provider Guide requires Baptist Hospitals to acquiesce to resolving the claims at issue in binding arbitration. Motion at 5-6 (DE# 9).
Baptist Hospital argues that Section 3.11 of the 2005 Medical Hospital Provider Agreement directly contradicts the "Resolving Disputes" provision in the 2018 UHC Provider Guide. Baptist Hospitals relies on cases including the following: In re Checking Account Overdraft Litigation, 915 F.Supp.2d 1334, 1339 (S.D. Fla. 2013), aff'd sub nom. Dasher v. RBC Bank (USA), 745 F.3d 1111 (11th Cir. 2014) (refusing to compel arbitration based on prior agreement's arbitration clause because operative agreement did not contain an arbitration clause) ); Careplus Health Plans, Inc., 124 So.3d at 971-72 (refusing to compel arbitration for claims brought under contract that did not contain arbitration clause, despite health insurer's argument that its parent company's agreement with provider required submission of claims to arbitration); and Sitarik v. JFK Med. Ctr. Ltd. Partnerships (JFK), 7 So.3d 576, 579 (Fla. 4th DCA 2009) (finding arbitration clause in agreement did not apply to plaintiff individually due to conflicting terms between agreement and addendum thereto). Baptist Hospitals maintain that reasonable *1307 cooperation is not the same as agreeing to submit disputes to mandatory arbitration.
Medica argues that the cases upon which Baptist Hospitals rely are factually distinguishable. In In re Checking Account Overdraft Litig., 915 F.Supp.2d 1334, 1339 (S.D. Fla. 2013), the court denied the motion to compel arbitration based on an arbitration provision in a prior agreement because it found that the new bank deposit agreement between the bank and account holders, which did not include an arbitration provision, stated that it superseded all prior agreements. In Careplus Health Plans, Inc. v. Interamerican Medical Center Group, LLC, 124 So.3d 968 (Fla. 3d DCA 2013), the appellate court affirmed the denial of a motion to compel arbitration because the claims were based on a 2004 agreement that did not contain an arbitration provision and expressly stated that it " 'may not be amended, supplemented, waived, or changed orally or by course of conduct of the parties but only by a written and signed document by the party by whom enforcement is sought and which shall make specific reference to this Agreement .' " Id. at 972 (quoting the 2004 Agreement) (emphasis in original). The 2010 Agreement required the parties to " 'arbitrate disputes arising form the parties' business relationship prior to the effective date of the [2010] Agreement.' " Id. (quoting the 2010 Agreement). Additionally, the Careplus Health Plans court found that there was no nexus between the 2010 Agreement and the claims at issue. Id. at 973.
None of the cases cited by Baptist Hospitals involve an agreement in which the provider agreed to comply with policies and procedures that could be amended or revised from time to time in one party's discretion so long as the amendments or revisions do not contradict express terms in the original agreement. See 2005 Medica Hospital Provider Agreement §§ 1.24, 3.2. Medica maintains that the arbitration provision in the 2018 UHC Provider Guide does not contradict an express term in the 2005 Medica Hospital Provider Agreement because it does not specify litigation rather than arbitration as the exclusive dispute resolution procedure. The undersigned agrees.
Baptist Hospitals' reliance on Section 3.11 "Grievances and Disputes" in the 2005 Medica Hospital Provider Agreement in support of its position that the arbitration provision conflicts with the parties' agreement is misplaced. The arbitration provision neither contradicts nor is inconsistent with Section 3.11. Both provisions address administrative grievance and appeal procedures. The arbitration provision governs after the parties exhaust the grievance and appeal process. Medica maintains that "appeal" refers to an administrative appeal, not a litigation appeal. Reply at 6 (DE# 21, 1/25/19) (citing 2005 Medica Hospital Provider Agreement § 3.11; and Ch. 6 and 9 of the 2018 UHC Provider Guide). The undersigned agrees that the arbitration provision in the 2018 UHC Provider Agreement does not conflict with Section 3.11. Section 3.11 does not expressly state that litigation is the exclusive method to resolve disputes.
Medica relies on Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005). In Caley, the Eleventh Circuit held that an enforceable arbitration provision existed as a result of the employer's unilateral promulgation of an arbitration provision in an employee handbook that was distributed to employees through letters and on its website because the court found that the plaintiffs' continued employment after notice and receipt of the policy constituted assent to the terms of the arbitration provision in the employee handbook.
*1308 Caley, 428 F.3d at 1376 (applying Georgia law) (footnote omitted); see Tinder v. Pinkerton Sec., 305 F.3d 728, 734-36 (7th Cir. 2002) (concluding that under Wisconsin law, the employee who remained employed beyond the effective date of the policy agreed to arbitrate claims because the policy explicitly stated that remaining employed past the effective date evidenced assent to the terms of the policy). In Caley, the Eleventh Circuit also found that the FAA simply requires a written agreement and that a signature is not required. Caley, 428 F.3d at 1369 (citing FAA § 2 and Medical Development Corp. v. Indus. Molding Corp., 479 F.2d 345, 348 (10th Cir. 1973) (citations omitted) ).
The undersigned finds that a written arbitration agreement exists by virtue of the 2018 UHC Provider Guide that was contemplated as a revision or amendment pursuant to Sections 3.2 and 1.24 of the 2005 Medical Hospital Provider Agreement. Because an arbitration agreement exists, the Court must determine next whether Baptist Hospitals' claims fall within the scope of the arbitration provision.
C. Baptist Hospitals' Claims Do Not Fall Within the Scope of the Arbitration Provision .
1. Baptist Hospital's Claims Predate the Effective Date of the Arbitration Provision and the Arbitration Provision Does Not Include Language That Makes It Apply Retroactively
Medica maintains that the arbitration provision in the 2018 UHC Provider Guide is broad and applies to "the outcome of any claim appeal, or for any other dispute than claim appeals." Motion at 7 (DE# 9, 1/4/19) (citing Lubowitz Decl. Ex. 2). Medica argues that the subject arbitration provision applies to Baptist Hospitals' claims even though Baptist Hospitals' claims predate the April 1, 2018 effective date of the arbitration provision in the 2018 UHC Provider Guide.
The 2018 UHC Provider Guide expressly states that "[t]his guide is effective April 1, 2018..." for current providers such as Baptist Hospitals. See 2018 UHC Provider Guide at i (DE# 9-3, 1/4/19). Medica has not identified any language in the 2018 UHC Provider Guide that makes the arbitration provision apply retroactively. See, Klay v. Pacificare Health System, Inc., 389 F.3d 1191, 1201 (11th Cir. 2004) (holding "[b]ecause arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties") (citation omitted); see also, Carter v. Doll House II, Inc., 608 Fed. App'x 903 (11th Cir. 2015) (unpublished)(affirming the denial of a motion to compel arbitration because there was nothing in the October Agreement to arbitrate regarding retroactivity); and Azevedo v. Carnival Corp., No. 08-20518-CIV, 2008 WL 2261195 at *8 (S.D. Fla. 2008) (holding that arbitration clause in 2006 contract could not be retroactively applied to claims that arose in 2004 where the complaint did not allege continuing misconduct or claims that occurred after the effective date expressly stated in the 2006 contract). Medica has not cited case law to support its position that the arbitration provision applies retroactively to Baptist Hospitals' claims for non-payment between January 2017 and January 2018.
Baptist Hospitals argue that at the time their claims arose, the policies and procedures in place did not require arbitration. Response at 8 and Ex. A (DE# 18, 1/18/19) (citing 2017 Medica Healthcare Care Provider Manual for Medicare Advantage Plan Care Providers ("2017 Manual") ). Baptist Hospitals contend that the 2018 *1309 UHC Provider Guide cannot retroactively bind Baptist Hospitals to arbitrate its claims that arose under the 2017 Manual that did not require arbitration. Id. The undersigned agrees.
Baptist Hospitals rely on All South Subcontractors, Inc. v. Amerigas Propane, Inc., 206 So.3d 77 (Fla. 1st DCA 2016) and Careplus Health Plans, Inc. v. Interamerican Medical Center Group, LLC, 124 So.3d 968 (Fla. 3d DCA 2013). Medica argues that All South Subcontractors and Careplus Health Plans are factually distinguishable because both cases involved parties who had two separate agreements, one containing an arbitration provision and one that did not. Both cases also had merger clauses that are substantially similar to the one in the present case. None of the agreements at issue in those cases contained a provision that allowed one party to unilaterally amend or revise the policies and procedures that were incorporated by reference as Sections 3.2 and 1.24 of the 2005 Medica Hospital Provider Agreement provides in the present case.
In All South Subcontractors, the plaintiffs filed a putative class action against the defendants for violations of Florida's Deceptive and Unfair Trade Practices Act and unjust enrichment. Id. at 79. The defendants moved to compel arbitration based on the most recent version of the defendants' "terms and conditions" that included an arbitration provision. The plaintiffs argued that the action was based on the terms of the parties' agreement in 2010, which was the operative agreement in place at the time the causes of action arose, and that the 2012 terms and conditions could not "retroactively bind [the plaintiff] to an arbitration clause that [it] had not known existed in 2010." Id. at 80. The All South Subcontractors court agreed and held that the plaintiffs could not be compelled to arbitrate their claims based on the 2012 terms and conditions because "there was no assent to arbitrate disputes arising from the 2010 [contract] due to the lack of any arbitration language connected to that [contract]." Id. at 82 (citing Careplus Health Plans, Inc., 124 So.3d at 970 ).
The plaintiff in Careplus Health Plans was a medical services provider that entered into an agreement (the "2004 agreement") with the defendant, Careplus Health Plans, Inc., a subsidiary of Humana. Careplus Health Plans, Inc., 124 So.3d at 970. The parties' agreement did not contain an arbitration provision but had a merger clause[2] that was substantially similar to the merger clause in the present action. Id. Six years later, the plaintiff entered into a separate agreement (the "2010 agreement") with Humana that did require arbitration of disputes arising from the business relationship between it and Humana. Id. Careplus was an affiliate of Humana, but did not sign the 2010 agreement. Relying upon the arbitration clause in the 2010 agreement, the defendant moved to compel arbitration of Careplus' claims arising from the 2004 agreement. Id. at 971. In Careplus Health, the Florida appellate court affirmed the trial court's denial of a motion to compel arbitration because there was "no significant relationship between the claim and the agreement containing the arbitration clause." Id. at 972 (citing Seifert v. U.S. Home Corp., 750 So.2d 633, 637-38 (Fla. 1999) ). In Seifert, the Supreme Court of Florida explained:
*1310 [E]ven in contracts containing broad arbitration provisions, the determination whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause.
Seifert, 750 So.2d at 638. Under Florida law, " 'a significant relationship is described to exist between an arbitration provision and a claim if there is a 'contractual nexus' between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract.' " Careplus Health, 124 So.3d at 973 (quoting Jackson v. Shakespeare Found., Inc., 108 So.3d 587, 593 (Fla. 2013) (internal citations omitted) ). In Careplus Health, the court found that the claims arose out of the 2004 Agreement, which did not contain an arbitration provision. "[The plaintiff] did not need to rely upon, refer to, construe or introduce any portion of the 2010 Agreement." Id. The court held that "[t]he absence of any identifiable nexus or significant relationship between the 2010 Agreement and the claims arising out fo the 2004 Agreement is fatal to the position taken by Careplus, and the trial court properly denied the motion to compel." Id.
Similarly, in the present case, Baptist Hospitals' claims arose under the 2017 Manual that did not contain an arbitration provision. There is no nexus between Baptist Hospitals' claims and the 2018 UHC Provider Guide. All South Subcontractors, Careplus Health, Seifert and Jackson all support Baptist Hospitals' position that its claims are not subject to arbitration under the 2018 UCH Provider Guide because of a lack of nexus to the agreement containing the arbitration provision. See also, Klay v. Pacificare Health System, Inc., 389 F.3d 1191, 1201 (11th Cir. 2004) (holding "[b]ecause arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties") (citation omitted); and Azevedo v. Carnival Corp., No. 08-20518-CIV, 2008 WL 2261195 at *8 (S.D. Fla. 2008) (holding that arbitration clause in a 2006 contract could not be retroactively applied to claims that arose in 2004 where the complaint did not allege continuing misconduct or claims that occurred after the effective date expressly stated in the 2006 contract).
Baptist Hospitals' claims arose before the April 1, 2018 effective date of the 2018 UHC Provider Guide. No arbitration provision existed at the time Baptist Hospitals' claims arose. See 2017 Manual, Exhibit A to Response (DE# 18, 1/18/19). Medica cannot retroactively bind Baptist Hospitals to the arbitration provision in the 2018 UHC Provider Guide where, as here, the claims at issue arose under the 2017 Manual that did not contain an arbitration provision and thus, did not require arbitration. Because the arbitration provision in the 2018 UHC Provider Guide is not retroactive and Baptist Hospitals' claims have no nexus with the 2018 UHC Provider Guide, Medica's motion to compel arbitration based on the arbitration provision in the 2018 UHC Provider Guide should be denied.
2. Baptist Hospitals' Merger Clause Argument Lacks Merit
Baptist Hospitals argue that the merger clause in the 2005 Medica Hospital Provider Agreement requires that any modification of the Agreement's terms be in writing and signed by both parties. Baptist Hospitals contend that Medica's unilateral modification, that would require all disputes to be submitted to arbitration by adding the provision in the 2018 UHC
*1311 Provider Guide, is unenforceable because Baptist Hospitals never agreed to nor intended to agree to such terms. Response at 9 (DE# 18, 1/18/19).
The undersigned finds that Baptist Hospitals' merger clause argument lacks merit. The merger clause in the 2005 Medica Hospital Provider Agreement states:
8.1 Entire Agreement
This Agreement and its attachments and exhibits embody all of the terms and conditions relating to this Agreement. This Agreement supersedes all prior understandings and agreements, whether written or oral, between the parties. The provisions of this Agreement may not be amended, supplemented, changed orally or by course of conduct of the parties , but only by a written document signed by all the parties.
(DE# 9-2, § 8.1) (emphasis added). Baptist Hospitals' interpretation and suggested application of the merger clause would negate their obligation to "reasonably cooperate with [Medica's] policies and procedures, including ... the Hospital Manual...." that Medica had the contractual right to unilaterally "amend[ ] and revise[ ] from time to time ... in its discretion." Sections 3.2 and 1.24 of the 2005 Medica Hospital Provider Agreement. Contract interpretation principles require courts to give meaning to all provisions of a contract. In Sections 3.2 and 1.24, Baptist Hospitals expressly agreed to comply with procedures and policies that Medica had the discretion to amend or revise in the future as long as the terms in such publications do not conflict with the 2005 Medica Hospital Provider Agreement.
Baptist Hospitals' suggested application of the merger clause would negate Medica's contractual right to promulgate amended or revised polices and procedures in its discretion in the future. The undersigned rejects Baptist Hospitals' merger clause argument and finds that Section 3.2 and 1.24 of the 2005 Medica Hospital Provider Agreement expressly authorize future unilateral amendments or revisions of policies and procedures by Medica to the extent such amendments or revisions do not conflict with the 2005 Medica Hospital Provider Agreement.
CONCLUSION
This Court should deny Medica's motion to compel arbitration. The undersigned finds that the arbitration provision that was added in the 2018 UHC Provider Guide is enforceable but is not retroactive. Neither Medica nor Baptist Hospitals agreed to arbitrate the subject claims for non-payment that occurred between January 2017 and January 2018. Medica cannot retroactively bind Baptist Hospitals to arbitrate the subject claims that predate the April 1, 2018 effective date of the 2018 UHC Provider Guide where, as here, Baptist Hospitals' claims have no nexus with the 2018 UHC Provider Guide. This Court should deny the motion to compel arbitration because Baptists' Hospitals claims are not subject to and do not fall within the scope of the arbitration provision in the 2018 UHC Provider Guide.
D. Stay
The Eleventh Circuit has held that "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration" when all of the claims are subject to mandatory arbitration." Lambert v. Austin Indus., 544 F.3d 1192, 1195 (11th Cir. 2008). The Eleventh Circuit has also affirmed dismissal on those grounds. See Caley v. Gulfstream Aerospace Corp., 333 F.Supp.2d 1367 (N.D. Ga. 2004), aff'd, 428 F.3d 1359 (11th Cir. 2005).
Because the undersigned recommends that Medica's motion to compel arbitration *1312 be denied, Medica's motion to stay should be denied as well.
E. Preservation of Rights
Medica requests that by its motion to compel it does not waive its rights to subsequently bring a Rule 12 motion to dismiss. Motion at 8 (DE# 9, 1/4/19) (citing Lamkin v. Morinda Properties Weight Parcel, LLC, 440 Fed. App'x 604, 607-608 (10th Cir. 2011) (finding that "[a] defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint). Baptist Hospitals does not address this issue in its response. The undersigned agrees that if this Court denies Medica's motion to compel arbitration, Medica should be permitted to file a motion to dismiss on the merits pursuant to Rule 12.
RECOMMENDATION
Based on the foregoing, the undersigned respectfully RECOMMENDS that the the defendant, Medica Healthcare Plans, Inc.s' Motion to Compel Arbitration and Stay the Litigation (DE# 9, 1/4/19) be DENIED .
The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1) ; Thomas v. Arn, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Henley v. Johnson, 885 F.2d 790, 794 (1989) ; 11th Cir. R. 3-1 (2016).
RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 26th day of March, 2019.

The redacted copy of the 2005 Medica Hospital Provider Agreement attached as an exhibit to the Lubowitz Declaration in the Court file does not reveal the content of Section 3.11. (DE# 9-2, 1/4/19)

The merger clause provided that the agreement "may not be amended, supplemented, waived or changed orally or by course of conduct of the parties but only by a written and signed document by the party by whom enforcement is sought and which shall make specific reference to this Agreement." Id. (emphasis in original).